961 F.2d 813
 60 USLW 2662
 ACF INDUSTRIES, INC.; General American Transportation
Corporation; General Electric Railcar Services Corporation,
Pullman Leasing Company; Railbox Company; Railgon Company;
Trailer Train Company; Union Tank Car Company, Plaintiffs-Appellants,
v.
DEPARTMENT OF REVENUE OF the STATE OF OREGON, Richard A.
Munn, in his capacity as Director of the
Department of Revenue of the State of
Oregon, Defendant-Appellee.
 No. 90-35402.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 8, 1991.
Decided April 8, 1992.
 
 James W. McBride, Laughlin, Halle, McBride, Lunsford & Fletcher, Washington, D.C. and Stephen D. Goodwin, Laughlin, Halle, McBride, Lunsford & Fletcher, Memphis, Tenn., for plaintiffs-appellants.
 Robert M. Atkinson, Asst. Atty. Gen., Salem, Or., for defendant-appellee.
 Robert W. Blanchette, Ass'n of American Railroads, Washington, D.C., for amicus curiae Ass'n of American Railroads.
 Appeal from the United States District Court for the District of Oregon.
 Before: BROWNING, CANBY and TROTT, Circuit Judges.
 TROTT, Circuit Judge:
 
 
 1
 Appellants (collectively, the "Carlines") challenge the district court's judgment in favor of the Department of Revenue of the State of Oregon (the "DOR"). The Carlines sought declaratory and injunctive relief against the DOR's assessment and collection of the Carlines' personal property tax for 1988, alleging discriminatory taxation in violation of the Railroad Revitalization and Regulatory Reform Act, 49 U.S.C. § 11503 (the "Act").[1] The district court ruled the Carlines had not sustained their burden of showing impermissible discrimination, and denied relief. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.
 
 
 2
 * Federal Statutory Framework
 
 
 3
 Section 306(1) prohibits states from taxing transportation property in a discriminatory fashion. It provides, in relevant part:
 
 
 4
 (1) ... [A]ny action described in this subsection is ... unreasonable and unjust discrimination against and an undue burden on, interstate commerce. It is unlawful for a State, a political subdivision of a State, or a governmental entity or person acting on behalf of such State or subdivision to commit any of the following prohibited acts:
 
 
 5
 (a) The assessment (but only to the extent of any portion based on excessive values as hereinafter described) for purposes of a property tax levied by any taxing district, of transportation property at a value which bears a higher ratio to the true market value of such transportation property than the ratio which the assessed value of all other commercial and industrial property in the same assessment jurisdiction bears to the true market value of all such other commercial and industrial property.
 
 
 6
 (b) The levy or collection of any tax on an assessment which is unlawful under subdivision (a).
 
 
 7
 (c) The levy or collection of any ad valorem property tax on transportation property at a tax rate higher than the tax rate generally applicable to commercial and industrial property in the same assessment jurisdiction.
 
 
 8
 (d) The imposition of any other tax which results in discriminatory treatment of a common carrier by railroad subject to this part.
 
 
 9
 Pub.L. No. 94-210, § 306(1) (emphasis added).
 
 
 10
 The parties have stipulated that the Carlines' property is "transportation property" within the meaning of the Act. "Commercial and industrial property" is defined as:
 
 
 11
 all property, real or personal, other than transportation property and land used primarily for agricultural purposes or primarily for the purpose of growing timber, which is devoted to a commercial or industrial use and which is subject to a property tax levy
 
 
 12
 ....
 
 
 13
 Pub.L. No. 94-210, § 306(3)(c).
 
 
 14
 Section 306(2) provides that "the district courts of the United States shall have jurisdiction, without regard to amount in controversy or citizenship of the parties, to grant such mandatory or prohibitive relief, interim equitable relief, and declaratory judgments as may be necessary to prevent, restrain, or terminate any acts in violation of this section...." Pub.L. No. 94-210, § 306(2).
 
 II
 Oregon's Ad Valorem Tax Scheme
 
 15
 All real and personal property in Oregon except that expressly exempted is subject to ad valorem taxation, and must be assessed and taxed "in equal and ratable proportion." Or.Rev.Stat. §§ 307.030 (1989). All personal property must be valued at 100 percent of its fair market value. Or.Rev.Stat. § 308.250 (1989). Certain classes of business personalty are exempt from ad valorem taxation, including agricultural machinery and equipment, business inventories, livestock, poultry, bees, fur-bearing animals, and agricultural products in the possession of farmers. Or.Rev.Stat. §§ 307.400, 307.325 (1989). Motor vehicles are exempt from personal property taxation but are subject to fixed motor vehicle registration fees in lieu of property taxes. Or.Rev.Stat. § 803.585 (1989). Standing timber, which many regard as a cornerstone of the State's economy, is also expressly exempt from ad valorem taxation. Or.Rev.Stat. §§ 321.272, 321.420 (1989). Standing timber is considered real property, and is taxed under a separate scheme when it is harvested. Or.Rev.Stat. §§ 307.010(1), 321.005 et seq. (1989).
 
 
 16
 The State of Oregon taxes railroad cars as "tangible personal property." Or.Rev.Stat. § 307.030 (1989). The Carlines claim Oregon's taxation of railroad property is discriminatory, in violation of section 306(1)(d), because "a large majority of non-railroad business personal property is not taxed" while railroad property is taxed in full. The district court held that, although the Carlines had standing to bring an action under section 306(1)(d), Oregon's exemption scheme constituted neither de jure nor de facto discrimination against the Carlines.
 
 
 17
 On appeal, the Carlines challenge the district court's ultimate conclusion, as well as the methodology it employed in examining the discrimination issue. Although the DOR agrees with the district court's ultimate conclusion that there was no discrimination in violation of section 306(1)(d), it argues that the type of discrimination the Carlines allege should not have been analyzed under section 306(1)(d), but rather under 306(1)(a) or (c). We agree with the Carlines that the discrimination claim was properly analyzed under section 306(1)(d) and that the Carlines made the necessary showing of discrimination.
 
 III
 Standard of Review
 
 18
 This matter was submitted to the district court on the pleadings, a stipulation of facts, and briefs. On appeal, we must determine whether the district court correctly applied the law to the stipulated facts. "Because the parties submitted this case on stipulated facts, the court's review is limited to a de novo examination of questions of law." Elwood v. Aid Ins. Co., 880 F.2d 204, 206 (9th Cir.1989). Further, "[s]ince the district court's application of the statutory scheme to the stipulated facts required consideration of the values underlying that scheme, the proper standard of review on appeal is de novo." Sunshine Mining Co. v. United States, 827 F.2d 1404, 1406 (9th Cir.1987); see also Schwartz Rojas v. Commissioner, 901 F.2d 810, 812 (9th Cir.1990) ("We review de novo the applicability of [the Internal Revenue Code] to the stipulated facts.").
 
 
 19
 "Though we would normally review the district court's findings of fact for clear error, the parties' stipulation to the facts obviates such review." Planned Parenthood of S. Nevada v. Clark County School Dist., 887 F.2d 935, 939 (9th Cir.1989) (citation omitted).
 
 IV
 The Discrimination Claim
 
 20
 The Carlines argue that Oregon's exemption scheme violates section 306(1)(d). They claim "it is a violation of section 306(1)(d) to fully tax rail transportation personal property when substantial amounts of personal property of other commercial and industrial property owners [are] not taxed." The DOR's response is two-pronged. First, the DOR claims the Carlines may challenge Oregon's property tax scheme only under section 306(1)(a) or (c), which prohibit ad valorem taxation of railroad property at a higher "assessment ratio" or "rate" than non-railroad property,[2] but which do not prohibit discriminatory exemption schemes. See ACF Indus. v. Arizona, 714 F.2d 93 (9th Cir.1983).
 
 
 21
 The DOR contends that the broader anti-discrimination provisions of subsection (1)(d) cannot be invoked in this case. It argues that subsections (1)(a) and (1)(c) fix the permissible scope of property taxation. Subsection (1)(d), on the other hand, prohibits "any other tax which results in discriminatory treatment" of the railroads, which to the DOR means that subsection (1)(d) applies only to taxes "other" than property taxes. According to the DOR, then, any challenge involving property taxes must be brought under subsection (1)(a) or (c). Because those subsections do not prohibit discriminatory exemption schemes, the DOR essentially argues that discriminatory exemptions in a state's property tax structure cannot be challenged under any subsection of section 306.
 
 
 22
 Second, the DOR contends that, even if the exemption scheme can be challenged under section 306(1)(d), section 306(1)(d) should be interpreted "in light of" sections 306(1)(a) and (c). Subsections (1)(a) and (c) compare transportation property to other "commercial and industrial property" to determine whether discrimination exists. "Commercial and industrial property" is defined as "all property, real or personal ... which is subject to a tax levy." Pub.L. No. 94-210, § 306(3)(c). Exempt property, by definition, is not taxed, and would therefore not enter into the discrimination calculation under subsections (1)(a) and (c). The DOR would like us to conclude by analogy that Oregon's exempt property should likewise not be included in the discrimination calculation under subsection (1)(d).
 
 
 23
 We disagree with both prongs of the DOR's argument, and agree with the Carlines.
 
 
 24
 * Applicability of Section 306(1)(d)
 
 
 25
 We first address the DOR's contention that section 306(1)(d) does not apply to Oregon's exemption scheme because the validity of property tax exemptions is governed exclusively by section 306(1)(a) or (c), and is permitted under both subsections. Arguing that section 306(1)(d) does apply, the Carlines rely on three recent cases in which property tax exemptions were challenged under that section. See Trailer Train Co. v. Leuenberger, 885 F.2d 415 (8th Cir.1988), cert. denied sub nom., Boehm v. Trailer Train Co., 490 U.S. 1066, 109 S.Ct. 2065, 104 L.Ed.2d 630 (1989); Burlington N. R.R. Co. v. Bair, 766 F.2d 1222 (8th Cir.1985); Ogilvie v. State Bd. of Equalization, 657 F.2d 204 (8th Cir.), cert. denied, 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981). Although none of those cases dealt with the precise argument raised by the DOR, we are persuaded by them that subsection (1)(d) must be applied to cases of discriminatory property tax exemptions if Congress's purpose in enacting section 306 is to be served.
 
 
 26
 Ogilvie involved a challenge to North Dakota's assessment of railroad personal property at a higher ratio than non-railroad personal property. Under North Dakota's taxation scheme, "locally assessed" commercial and industrial property was assessed at 12.2% of market value, while "state assessed" property, including that of the railroads, was assessed at 16.8% of market value. Ogilvie, 657 F.2d at 208. As part of this scheme, North Dakota included personal property and trade fixtures in the assessed value of railroad property, but exempted from taxation the personal property of locally assessed businesses. Id. at 209.
 
 
 27
 The Eighth Circuit held this exemption system violated section 306(1)(d), noting:
 
 
 28
 ... The most obvious form of tax discrimination is to impose a tax on a class of rail transportation property that is not imposed on other nonrailroad property of the same class. The inclusion of personal property in the assessed value of railroad property and other centrally assessed businesses imposes a personal property tax on centrally assessed businesses that is not imposed on locally assessed businesses.
 
 
 29
 Id. at 210 (quoting Ogilvie v. State Bd. of Equalization, 492 F.Supp. 446, 454-55 (D.N.D.1980)). Because the statute on its face deliberately and openly discriminated against rail transportation property, it violated section 306(1)(d). Id.; see also Leuenberger, 885 F.2d at 417.
 
 
 30
 In Bair, Iowa "rolled back" the assessed value of all personal property, except that of railroads and a small number of other large taxpayers, with the result that ninety-five percent of personal property owners were exempt from taxation. Bair, 766 F.2d at 1224. Burlington Northern claimed the system was discriminatory, and resulted in 50% of Burlington Northern's property that should have been classified as personal being improperly classified as real property. Burlington Northern argued that it was entitled to the tax benefits of rollbacks and credits for this 50%. Id. The court agreed, holding:
 
 
 31
 ... Iowa's classification scheme results in obvious discrimination against Burlington Northern by excluding it from the benefits of personal property tax rollbacks and credits which most other taxpayers enjoy. This type of de jure discrimination clearly falls within the prohibition of section 306(1)(d).
 
 
 32
 Id.
 
 
 33
 Finally, in Leuenberger, Nebraska exempted certain personal property from taxation. The net result was that "75.75% of commercial and industrial personal property [was] exempt from taxation in Nebraska." Leuenberger, 885 F.2d at 416. Like the Oregon statute in question here, the Nebraska statute was "neutral on its face and non-discriminatory, in that it [did] not deny to any individual or entity the ability to benefit from the exemptions provided for specific items of personal property." Id. at 417. Even so, the court found the exemption scheme violated section 306(1)(d):
 
 
 34
 ... Section 306(1)(d) prohibits the imposition of any other tax that results in discrimination.... Tax exemptions are to be considered in determining whether there has been discriminatory treatment under § 306(1)(d). It makes no difference whether the discriminatory result is achieved by exempting locally assessed property or exempting the property of particular business, the railroads are being discriminated against contrary to section 306(1)(d). The North Dakota and Iowa statutes gave tax benefits to certain taxpayers, those assessed locally. The Nebraska statute, instead, exempts certain kinds of personal property from taxation whether assessed locally or centrally. However, except for motor vehicles paying registration fees and business inventories, the exemptions apply only to agriculturally related personal property. Nebraska, through the use of exemptions has, in effect, given benefits to those taxpayers involved in agriculture which are denied to taxpayers involved in other businesses or industries. The exemptions are specific. Only taxpayers involved in agriculture are likely to own any of the exempted personal property. It is equally unlikely that those involved in agriculture would own any operating railcars. Thus, the result is that the exemptions apply to certain taxpayers, the same as the North Dakota and Iowa statutes.
 
 
 35
 ....
 
 
 36
 When the exemptions apply to three-fourths of the commercial and industrial property in Nebraska, and do not apply to rail cars, the tax system in Nebraska discriminates against [the railroads] and violates § 306(1)(d)....
 
 
 37
 Id. at 417-418 (emphasis in original); see also Trailer Train Co. v. State Bd. of Equalization, 710 F.2d 468, 473 (8th Cir.1983).
 
 
 38
 These cases demonstrate that sections 306(1)(a) and (c) do not define the limits of the Act's prohibitions against discriminatory taxation of railroads, even when that discrimination occurs in the context of an ad valorem property tax scheme. Subsections (1)(a) and (c) prohibit discrimination in assessment ratios and rates of taxation, but they do not provide that those prohibitions are the only ones applicable to property taxation, nor do they affect subsection (1)(d)'s ban on other types of discrimination. It is not surprising, then, that courts have applied subsection (1)(d) to prevent other forms of discrimination in property taxes that are not reached by subsections (1)(a) and (1)(c).
 
 
 39
 As the Eighth Circuit stated in Ogilvie, the purpose of section 306 "was to prevent tax discrimination against railroads in any form whatsoever." Ogilvie, 657 F.2d at 210 (emphasis added); accord Department of Revenue, State of Florida v. Trailer Train Co., 830 F.2d 1567, 1573 (11th Cir.1987) (" 'The legislative history and broad language of [§ 306] show Congress possessed a general concern with discrimination in all its guises....' ") (quoting Southern Ry. Co. v. State Bd. of Equalization, 715 F.2d 522, 528 (11th Cir.1983)) (emphasis added in Trailer Train). To effectuate that intent and prohibit the states from doing indirectly what sections 306(1)(a) and (c) prohibit them from doing directly, section 306(1)(d) must be read broadly. See Trailer Train Co. v. State Bd. of Equalization, 697 F.2d 860, 865 (9th Cir.), cert. denied 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983) (different section of the Act interpreted broadly to accomplish congressional purpose of eliminating discriminatory taxation of property). We conclude, therefore, that section 306(1)(d) prohibits not only discriminatory taxes other than property taxes subject to subsections (1)(a) and (1)(c) but also--as here--taxation of a railroad's transportation property which discriminates in a manner other than by assessment ratio or rate.
 
 B
 Interpretation of Section 306(1)(d)
 
 40
 Having concluded that section 306(1)(d) applies to Oregon's exemption scheme, we now address the DOR's contention that totally exempt property should not be considered in the comparison because such property is not "subject to a property tax levy."[3]
 
 
 41
 The DOR relies on cases holding that sections 306(1)(a) and (c) are not violated when states exempt certain classes of property while taxing railroad property in full. See ACF Industries v. State of Arizona, 714 F.2d 93, 94 (9th Cir.1983) ("ACF Arizona"); Clinchfield R.R. Co. v. Lynch, 784 F.2d 545, 553 (4th Cir.1986) ("Clinchfield "); Department of Revenue, State of Florida v. Trailer Train, 830 F.2d 1567 (11th Cir.1987) ("Trailer Train Florida"). The DOR would have us apply the holdings of these cases to claims brought under section 306(1)(d). We decline the invitation.
 
 
 42
 In ACF Arizona, the Carlines argued that Arizona's property tax was discriminatory under section 306(1)(a). The parties agreed that section 306(1)(a) controlled the dispute, but they disagreed on the meaning of its language.
 
 
 43
 Section 306(1)(a) forbids states from assessing railroad property at an assessment ratio exceeding the average assessment ratio applicable to all "other commercial and industrial property in the assessment jurisdiction." Pub.L. No. 94-210, § 306(1)(a). The Carlines claimed "that the state ought to include in its calculation of commercial property all the business inventories in the state (which are categorically exempt from ad valorem taxes) in determining the assessment ratio." ACF Arizona, 714 F.2d at 94. Rejecting this notion for purposes of section 306(1)(a), we noted that "[t]his claim has nothing to commend it but a careful lawyer's desire to leave no possible theory unexplored. We find no authority requiring untaxed property to be included in an average of assessed value for taxed property." Id.
 
 
 44
 In Clinchfield II, a group of railroads sought recovery for discriminatory taxation in violation of section 306(1)(a). On appeal, the state argued that "the court should not consider stored tobacco inventories because the tax rate applied to them is not the tax rate generally applicable to nonrailroad business property." Clinchfield II, 784 F.2d at 552. In essence, the state argued that, because tobacco inventories were taxed at a lower rate than other business property, they should be considered in the same way the ACF Arizona court considered the exempt business inventories--"not subject to a property tax levy." The Fourth Circuit rejected this argument, applying the ACF Arizona holding narrowly. It nevertheless endorsed the Ninth Circuit's reasoning:
 
 
 45
 The court in ACF [Arizona] was concerned only with totally exempt property, while the tobacco inventories in this case are taxed, but at a reduced rate. The ... Act does not require a state to tax all business personal property; the state is free to grant any exemptions. What the Act does require, however, is that whatever property is taxed should be taxed at a rate that does not discriminate against railroad property.
 
 
 46
 Id. at 553.
 
 
 47
 In Trailer Train Florida, the Eleventh Circuit, applying section 306(1)(a), concluded that exempt inventories should not be included in the definition of "other commercial and industrial property." The court noted:
 
 
 48
 A plain reading of the statute makes it apparent that business inventory which is totally exempt from taxation is not "subject to a property tax levy."
 
 
 49
 Trailer Train Florida, 830 F.2d at 1571. The court reinforced its conclusion with reference to the Act's legislative history:
 
 
 50
 The legislative history of the Act indicates that Congress was well aware of the property which was to be compared under the provisions of § 306(1)(a). In 1961, there was discussion that the comparison would be based on "all other property in the tax jurisdiction." S.Rep. No. 445, 87th Cong. 1st Sess. 465 (1961). Later the comparison was changed to "commercial and industrial property," with the latter category of property being confined to property "subject to a property tax levy."
 
 
 51
 Id. at 1572 n. 10; see also Trailer Train Co. v. State Bd. of Equalization, 538 F.Supp. 509, 512 (N.D.Cal.1982) ("Trailer Train California" ).
 
 
 52
 Although we have no quarrel with the reasoning of the above cases, they are simply inapposite. They apply only to sections 306(1)(a) and (c), which restrict the comparison class to "other commercial and industrial property." There is no analogous restriction in the broad language of section 306(1)(d). Indeed, the court in Trailer Train Florida reached a different conclusion under section 306(1)(d) than under section 306(1)(a): "We agree with the district court's conclusion that § 306(1)(d) requires consideration of tax exemptions in determining whether there has been discriminatory treatment." Trailer Train Florida, 830 F.2d at 1573. We conclude that the DOR's reliance on the above cases is misplaced. Our conclusion in Part IV(A) that section 306(1)(d) applies to exemption schemes would have no meaning if exempt property could not enter the equation.V
 
 The District Court's Methodology
 
 53
 On appeal the parties agree that if "a majority" of non-railroad property in Oregon is exempt from the ad valorem property tax imposed upon railroad property, discrimination is demonstrated under § 306(1)(d). See Appellant's Brief at 9; Appellee's Brief at 32-33. Although the district court declined to adopt any specific threshold, its opinion cited Burlington N. R.R. Co. v. Bair, 766 F.2d 1222 (8th Cir.1985), as establishing a fifty percent rule. The district court concluded the Oregon tax did not constitute discrimination under 306(1)(d) because only 30% of non-railroad commercial and industrial property in the state was exempt.
 
 
 54
 We find no support for a fifty percent threshold in the language of the statute itself which flatly prohibits "any other tax which results in discriminatory treatment" of the railroads. The most natural reading of this language is that the statute is violated by any exemption given to other taxpayers but not to railroads. This is the reading adopted by the Eighth Circuit in Ogilvie v. State Bd. of Equalization, 657 F.2d 204 (8th Cir.1981). In that case, North Dakota included personal property and trade fixtures in the assessed value of railroad property while exempting the personal property of locally assessed businesses. The court found the imposition of a tax on railroad property that was not imposed on non-railroad property violated section 306(1)(d) without reference to the extent to which non-railroad property was exempt. See id. at 210.
 
 
 55
 Nor do the cases support a fifty percent threshold. Burlington N. R.R. Co. v. Bair, 766 F.2d 1222 (8th Cir.1985), simply recites as a fact that fifty percent of Burlington Northern's property was in fact personal property and thus eligible for the favorable tax status accorded personal property owned by others. Id. at 1224-1225. Similarly, the court in Trailer Train Co. v. Leuenberger, 885 F.2d 415, 418 (8th Cir.1988), simply found the tax impermissibly discriminatory when 75% of commercial and industrial property but no railroad property was exempt; the court did not suggest a lower level of exemption of non-railroad property would have made the tax non-discriminatory.
 
 
 56
 We agree with the Eighth Circuit that any exemption not also available to railroads violates the statute, with the possible qualification that a de minimis level of exemption available only to other taxpayers may not state a claim under section 306(1)(d). Such a qualification may be implied by analogy to section 306(2)(c) which prohibits the district court from granting relief under section (1)(a) unless the ratio of assessed value to true market value exceeds by 5% the ratio for all other commercial and industrial property--a provision the Supreme Court has read as embodying Congress's desire to avoid the litigation of de minimis disparate impact claims. See Burlington N. R.R. Co. v. Oklahoma Tax Comm'n, 481 U.S. 454, 464, 107 S.Ct. 1855, 1861, 95 L.Ed.2d 404 (1987).
 
 
 57
 We do not decide in this case, however, whether such a de minimis limitation to the statute's apparently absolute prohibition of tax discrimination against railroads is to be implied. Under the calculation most generous to DOR, the exemption given to non-railroad property not available to railroads is far from de minimis.
 
 
 58
 The parties disagree as to whether real as well as personal property should be included in calculating the extent of the exemption of non-railroad property; whether standing timber should be part of the comparison class, or should be completely ignored because it is subject to a severance tax at harvest and is simply not subject to ad valorem taxation; and whether non-railroad property that is persistently undervalued and underreported should be treated as exempt.
 
 
 59
 Assuming all of these disputes are resolved in DOR's favor, 100% of Carlines' property is subject to Oregon's ad valorem tax, while 25% of non-railroad real and personal property is exempt from that tax.[4] The Carlines pay a substantial amount annually in ad valorem tax they would not pay if their property was also exempt. We have no doubt this level of discrimination far exceeds any possible de minimis exception and thus violates the statute.
 
 VI
 Remedy
 
 60
 DOR argues the Carlines are only entitled to an exemption for the percentage of their property corresponding to the percentage of all non-railroad property that is exempt. In support of its argument, DOR relies solely on our decisions in ACF Indus. v. State of Arizona, 714 F.2d 93, 94-95 (9th Cir.1983) and State of Arizona v. Atchison, Topeka, and Santa Fe R.R., 656 F.2d 398, 404 (9th Cir.1981). The decisions in these cases provide no support for DOR's argument. In both cases we were concerned only with what constituted the proper comparison to make out a substantive discrimination claim under section 306(1)(a). In ACF Indus., the Carlines' challenge failed so the court never faced the issue of an appropriate remedy. Similarly, in Atchison, Topeka and Santa Fe R.R., since Arizona sought only a declaratory judgment, the question of other remedies did not arise.
 
 
 61
 Carlines argues DOR should be enjoined from taxing any of its property under the present statute, relying on Leuenberger, 885 F.2d at 418, in which the court held that railroads subject to a discriminatory tax were entitled to the same total exemption preferred property owners enjoyed. We agree. The fact that there may be taxpayers other than railroads who are not exempt and must still pay the tax is irrelevant. These taxpayers are not protected by section 306(1)(d). We remand to the district court to enjoin DOR's collection of the ad valorem tax on the Carlines' property.
 
 
 62
 REVERSED AND REMANDED.
 
 
 
 [1]
 In 1976, Congress passed section 306 of Railroad Revitalization and Regulatory Reform Act of 1976, Pub.L. No. 94-210, § 306, 90 Stat. 31, 54 (1976), to solve the problem of discriminatory state taxation of railroads. Burlington N. R.R. Co. v. Oklahoma Tax Comm'n, 481 U.S. 454, 457, 107 S.Ct. 1855, 1857, 95 L.Ed.2d 404 (1987). Section 306 was originally codified at 49 U.S.C. § 26c, and its language was "slightly altered" when recodified in the Revised Interstate Commerce Act of 1978, Pub.L. No. 95-473, 92 Stat. 1337 (1978), 49 U.S.C. § 11503 (1988). Id. at 457 n. 1, 107 S.Ct. at 1858 n. 1. The recodified version "may not be construed as making a substantive change in the laws replaced." Id. (quoting section 3(a), 92 Stat. 1466); see also Atchison, Topeka and Santa Fe Ry. Co. v. Lennen, 640 F.2d 255, 258 (10th Cir.1981) ("Lennen I" ); Atchison, Topeka and Santa Fe Ry. Co. v. Lennen, 732 F.2d 1495, 1497 (10th Cir.1984) ("Lennen II"). "Because the revision was not intended to change the law, we must resolve any substantive conflicts between the original language of § 306 and the language in § 11503 in favor of the original language." Lennen II, 732 F.2d at 1497 (citing Lennen I, 640 F.2d at 258). There is, of course, an exception to this general rule for resolving conflicts between the original and the new language: If substantive language has disappeared altogether, there is nothing left to interpret. For example, section 306(1)(a) contained language that prohibited discriminatory assessments "(but only to the extent of any portion based on excessive values as hereinafter described) ..." The language in parenthesis was deleted in the recodification. In Arizona v. Atchinson, Topeka & Santa Fe R. Co., 656 F.2d 398 (9th Cir.1981), Arizona tried to take advantage of this language in a lawsuit filed after the language was deleted in the recodification, but this court denied the attempt, holding that "it is not necessary to interpret language in a statute that never went into effect, when there is no language in the statute that may lend itself to the interpretation put forward by Arizona." 656 F.2d at 410
 This case involves section 11503(b)(4), which provides in relevant part:
 (b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:
 ....
 (4) impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Commission under ... this title.
 The corresponding provision of section 306 provides that a State may not impose "any other tax which results in discriminatory treatment of a common carrier by railroad." Pub.L. No. 94-210, § 306(1)(d). To avoid any potential distortion of the meaning of the original enactment, we will therefore rely on the language of section 306(1)(d) in deciding this case.
 
 
 [2]
 The DOR argued below that the Carlines do not have standing to sue under section 306(1)(d) because they are not common carriers by railroad. The DOR has apparently abandoned that argument on appeal, focusing instead on its argument that section 306(1)(d) does not apply to exemptions. Although we have not specifically decided whether entities other than railroads have standing to challenge a state tax under section 306, we have considered such challenges without discussing the standing question. See, e.g., ACF Industries v. State of Arizona, 714 F.2d 93 (9th Cir.1983); Trailer Train Co. v. State Bd. of Equalization, 697 F.2d 860, 864 (9th Cir.), cert. denied 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983). In this case, we agree with the district court that the Carlines have standing
 Section 306(1)(d) prohibits any tax that results in discriminatory treatment of a common carrier by railroad, even if the effect is indirect. Without a doubt, if Oregon's tax exemption scheme discriminates against the Carlines, it also "results" in discrimination against the railroads. Reaching that very conclusion, the Eighth and Eleventh Circuits have emphasized "the close relationship between [the Carlines] and common carriers, and [have] held that the tax need not be directly imposed on a common carrier in order to be covered by § 306(1)(d). In any event, the required analysis under 306(1)(d) could show an effect on private carlines which directly and integrally impacts on common carriers by railroad." Department of Revenue, State of Florida v. Trailer Train, 830 F.2d 1567 (11th Cir.1987); see also Trailer Train Co. v. State Tax Comm'n, 929 F.2d 1300, 1302 (8th Cir.1991) (section 306 covers entities who are "engaged in the business of leasing railroad cars to railroads that use the leased cars in their interstate operations"); Trailer Train Co. v. Bair, 765 F.2d 744, 745 (8th Cir.1985) (same); Trailer Train Co. v. State Bd. of Equalization, 710 F.2d 468, 471-73 (8th Cir.1983) ("[B]ecause tax discrimination against the Carlines' railroad cars adversely affects common carriers by railroads directly and immediately as tax discrimination against the railroad cars of the carriers themselves, and because section 306(1)(d) prohibits any state tax which 'results in discriminatory treatment of a common carrier by railroad,' the plain language of the statute supports the district court's holding that [the Carlines have standing.]").
 
 
 [3]
 The phrase comes from the definition of "commercial and industrial property" in section 306(3)(c), 49 U.S.C. § 11503(a)(4)
 
 
 [4]
 
 TABLE
Personal and Real Property (in billions of dollars) Assuming Standing Timber is
 "Exempt"*
-------------------------------------------------------------------------------
-------------------------------------------------------------------------------
Total Real and Personal Property $39.2
 Taxed Property
 Personal Property
 Locally Appraised $3.6
 Non "Railroad $1.2
 Utility
 Real Property
 Non "Railroad Utility $4.8
 Locally Assessed $8.3
 -----
 $17.9
 Exempt Property
 Business Inventories $6.8
 Farm Machinery & $1.4
 Equipment
 Motor Vehicles $1.5
 -----
 $9.7
Percentage of Non "Railroad Property that is
Exempt from Taxation 24.7%
-------------------------------------------------------------------------------
-------------------------------------------------------------------------------
 
 
 *
 Because we assume, as the
 DOR argues, that
 undervaluation and
 underreporting are not
 discriminatory under section
 306, those figures are
 excluded from the
 calculation.