**CSX TRANSPORTATION, INC.**

v.

**TENNESSEE STATE BOARD OF EQUALIZATION.**

No. 3:91–0066.

United States District Court,
M.D. Tennessee,
Nashville Division.

July 20, 1992.

 

Gareth S. Aden, Todd J. Campbell, Gullett, Sanford, Robinson & Martin, Nashville, Tenn., James W. McBride, Laughlin, Halle, McBride, Lunsford & Fletcher, Washington, D.C., for CSX Transp.

Daryl J. Brand, Jimmy Glen Creecy, Office of the Atty. Gen., Nashville, Tenn., for Tennessee State Bd. of Equalization.

## MEMORANDUM OPINION

WISEMAN, District Judge.

This is a civil action seeking to restrain and enjoin the defendant, and those acting in concert and participating with it, from assessing, levying or collecting ad valorem personal property taxes from the plaintiff for the 1990 tax year, to the extent that such taxes are discriminatory and unlawful under Section 306 of the Railroad Revitali-

zation and Regulatory Reform Act of 1976, Pub.L. No. 94–210, 90 Stat. 54 (Feb. 5, 1976), codified at 49 U.S.C. § 11503 and referred to herein as "Section 306."

The language of 49 U.S.C. § 11503 as codified differs from the language of Section 306 as enacted. The codification of 49 U.S.C. § 11503 cannot be construed as making any substantive changes to the meaning of Section 306. *See Burlington Northern Railroad Company v. Oklahoma Tax Commission*, 481 U.S. 454, 457, n. 1, 107 S.Ct. 1855, 1858, n. 1, 95 L.Ed.2d 404 (1987).

This Court has jurisdiction pursuant to Section 306 which confers jurisdiction upon the United States district courts to prevent a state, subdivision of the state or any authority acting for a state or subdivision, from imposing discriminatory ad valorem taxes on common carriers by rail. This Court has further jurisdiction based on 28 U.S.C. § 1337 and 28 U.S.C. § 1331.

The parties have stipulated to the following facts:

1. Plaintiff, CSX Transportation Inc. ("CSXT"), is engaged in interstate commerce as a common carrier by rail.

2. Defendant, Tennessee State Board of Equalization ("Board"), is the State agency responsible for the final valuations of ad valorem property taxes on railroads within the State of Tennessee pursuant to T.C.A. § 67–5–1329.

3. Railroad operating property which is the subject of the contested assessment is transportation property with the meaning of Section 306 and 49 U.S.C. § 11503.

4. Railroad property was appraised for assessment purposes by the Public Service Commission for the 1990 tax year at 100% of true market value before equalization factors were applied.

5. For 1990, 36.84% of CSXT's rail transportation property consisted of personal property and 63.16% of CSXT's rail transportation property consisted of real property.

The Court denied a preliminary injunction in the case which was affirmed on appeal. *CSX Transportation, Inc. v. Tenn. State Board of Equalization*, 964 F.2d 548 (6th Cir.1992).

The case was then tried before the Court without a jury on February 25 through February 28, 1992. CSXT presented testimony from two expert witnesses, Melvin Fineberg and Dick Netzer, Ph.D. CSXT also presented deposition testimony from Camille Noah–Hubbard, the Manager of Personal Property for Shelby County; James Bayne, the Manager of Personal Property for Davidson County; and Rule 31 deposition testimony from the county assessors of 15 other counties.

The Board presented testimony from Kenneth Morrell, Barry Murphy, Kelsie Jones, Claude Ramsey, Lynda Ruehling, and Park Strader, and the expert testimony of William Fox, Ph.D., Harry Green, Ph.D., and Robert Gloudemans. The Board also presented the deposition testimony of J.P. Ayers.

In rebuttal, CSXT called Dr. Netzer and Henry H. Fishkind, Ph.D. In surrebuttal testimony, the Board re-called Dr. Green and, via telephone deposition, Dr. Fox.

At the conclusion of all the testimony, the Court requested proposed findings of fact and conclusions of law as well as written argument from the parties. From a consideration of the entire record in the cause, the Court holds that the plaintiff has failed to demonstrate by a preponderance of the evidence a violation of Section 306.

Findings of Fact

In Tennessee most commercial, industrial, residential and farm property is valued locally by county assessors. T.C.A. §§ 67–5–102, 103. Assessments of personal property are made annually primarily on the basis of information supplied by the property owners in schedules filed with the county assessor.

Assessments of public utility and common carrier property, including the plaintiff's property, are made annually by the Assessment Division of the Tennessee Public Service Commission, primarily upon the basis of information supplied by the property owner in a schedule filed with the Assessment Division. T.C.A. § 67–5–1301.

The assessments are reviewed by the State Board of Equalization and equalized on the basis of median appraisal ratios determined by the Board for each county taxing jurisdiction. T.C.A. § 67–5–1328.

In valuing the plaintiff's operating property for ad valorem tax purposes the Assessment Division employs a mass appraisal method commonly referred to as the "unit method" of property valuation. T.C.A. § 67–5–1302. The "unit value" for all operating property in the plaintiff's entire multi-state system is first determined. An allocation factor is then applied to apportion a part of the system value to Tennessee. T.C.A. § 67–5–1322, 1323. The State Board of Equalization has the duty under T.C.A. § 67–5–1328 to examine and review the assessments of utilities and carriers made by the Public Service Commission. Once this is done by the Board, the valuation fixed upon each property is certified back to the Public Service Commission, T.C.A. § 67–5–1329, which in turn certifies to each county and municipality its portion of the total assessment. T.C.A. § 67–5–1331. The assessment ratio of 40% of value for commercial and industrial real property and 30% of value for commercial and industrial personal property, set by Article II, Section 28 of the Tennessee State Constitution, is also applied to rail transportation real and personal property.

Tennessee state law has established an elaborate statutory process to ensure that centrally valued railroads are assessed at the same level as locally valued properties. T.C.A. § 67–5–1603, et seq. The Board is directed to conduct appraisal ratio studies in all counties of the state every two years. T.C.A. § 67–5–1605(b)(1). Railroads and other public utilities are valued annually by the Public Service Commission at 100% of true value. The Board of Equalization then certifies to the Public Service Commission the appraisal ratio levels for each county which are applied to the railroad and public utility assessments, thereby reducing their assessed values. T.C.A. § 67–5–1606(c). This statutory process, which is called "equalization," ensures that railroads and other public utility property which is centrally valued by the Public Service Commission is assessed the same as locally assessed properties.

Property taxes are collected by county trustees and by city recorders and treasurers after adoption of a tax rate determined by the governing body of the local taxing jurisdiction.

The total appraised unit value placed upon the plaintiff's property, real and personal, by the Tennessee Public Service Commission for 1990 was $3.65 billion. The parties agree that that value represented 100% of the true market value of CSXT property. Of the total unit value, 5.63%, or $205,585,581, was allocated to Tennessee for 1990. For 1990, 36.84% of CSXT's rail transportation property consisted of personal property, and 63.16% consisted of real property. After applying the appropriate assessment factors (40% for real property; 30% for personal property), the assessed value of the plaintiff's personal property for 1990 was $22,721,318 and the assessed value of plaintiff's real property was $51,939,114, before equalization factors were applied. After applying equalization factors, the taxable value of the plaintiff's personal property was $18,756,448 for 1990.

The plaintiff's allegations that for tax year 1990 commercial and industrial personal property was appraised poorly by local tax assessors, and substantially below true market value, is not borne out by the evidence. The testimony of the local tax assessors, Mr. Strader of Knox County, Mr. Ramsey of Hamilton County, Ms. Ruehling of Grundy County, and by deposition, Ms. Noah–Hubbard of Shelby County, Mr. Bayne of Davidson County, and Mr. Ayers of Campbell County, all support the finding that they are substantially valuing all local personal property at or very near market value.

All of the local tax officials based their personal property valuations and assessments upon rules promulgated by the Tennessee State Board of Equalization and a filing form, Schedule B, developed therefrom. These rules were effective for the tax year 1990 and were adopted after a two

to three year period of hearings receiving input from private and public parties and recommendations from staff members. Under the rules personal property is valued upon an original acquisition cost less straight line depreciation with a minimum basis of valuation being 25 percent of the original acquisition cost. The rules contain various categories of property and a standard of depreciation lives for each category. Inventories of raw materials and supplies are reported at cost basis upon a first-in, first-out method of valuation. A provision for a nonstandard value is available if the standard approach does not give fair market value. The Division of Property Assessments of the Tennessee Comptroller's Office monitors assessment summaries of each county to ensure that a county is properly applying the rules and picking up personal property accounts. The rules also provide that audits of the personal property accounts may be performed if and as deemed necessary by the county assessors.

While the plaintiff offered the opinion of Mr. Melvin Fineberg, an appraiser of machinery and equipment, that the depreciation methods used by the State Board rules were inadequate, Mr. Fineberg conceded that the use of straight-line depreciation yields a higher taxable basis than his modified double-declining balance method. Mr. Fineberg further admitted that there were problems with his method especially as applied to machinery and equipment purchased used. In applying his approach to railroad property, Mr. Fineberg concluded that the state had understated the value of railroad machinery and equipment while overstating the value of machinery and equipment in other industries. Since the Court finds and the parties concede that railroad real and personal property is accurately valued in Tennessee for the tax year in question, Mr. Fineberg's testimony does not disapprove the accuracy or the propriety of the State Board rules for the valuation of personal property.

■ Contrary to the allegations of the plaintiff that commercial and industrial personal property is appraised poorly by local tax assessors, the evidence and testimony shows that local assessors are doing an adequate job in the discovery and valuation of personal property within their jurisdictions. The testimony of several of these officials show that reviews and desk audits are performed on all filed personal property tax returns as well as follow up correspondence, inspection, and review of records if discrepancies are noted. An effort is made to discover unreporting taxpayers by inspections of phonebooks, city directories, business license records and visual inspections. All of the local assessment officials testified that they believed that commercial and industrial personal property was being accurately assessed in their jurisdictions for 1990, and that they did not know of any property which was underassessed or omitted. While an audit performed for Shelby County in 1989 of thirty large personal property taxpayers revealed a substantial additional tax assessment, eleven of those taxpayers had actually overpaid and most of the remainder have appealed the additional assessment for the years 1986, 1987, and 1988 to the local board of equalization. Thus, the results of that audit are inconclusive and certainly do not show a systematic undervaluation and underreporting of personal property in the State of Tennessee. Furthermore, it appears that for the year in question, 1990, Shelby County has instituted a vigorous audit program which would question whether there is any substantial underreported or underassessed personal property for that tax year.

■ The proof shows that a statutorily mandated biannual appraisal ratio study is performed by the Division of Property Assessments to determine the overall level of appraisal in each county. Ratios derived from that study are used to equalize railroad property assessments with locally assessed property. These equalization ratios were developed for each county to alleviate any distinctions between local assessments and centrally assessed property such as that of the plaintiff. All of the plaintiff's property, both real and personal, is adjusted by these equalization ratios before allocation of their value to the individual coun-

ties. The testimony shows that in many of these counties, while a reduction in assessment due to application of the equalization ratios is given railroad personal property, local commercial and industrial personal property is not afforded this reduction unless formal petition is made. Realistically, very few local taxpayers make such a formal petition. Plaintiff has failed to show by a preponderance of evidence that for tax year 1990 commercial and industrial property was being appraised by local tax assessors substantially below market value.

Plaintiff's case rested heavily on the testimony of its expert, Dr. Dick Netzer, an economist who used statistics on the value of certain assets to develop an estimate of total market value of commercial and industrial personal property in Tennessee. He has done similar estimates in 4–R Act litigation since 1983 in at least 15 other states. Plaintiff also presented the testimony of Dr. Henry Fishkind, who had utilized Dr. Netzer's methodology for similar litigation in Florida. Dr. Netzer used data from the U.S. Department of Commerce, Bureau of Economic Analysis, including *Fixed Reproducible Tangible Wealth in the United States, 1925–85* (June 1987), the *1987 Census of Manufactures, Current Business Reports, Annual Retail Trade: 1988*, the *1987 Census of Wholesale Trade*, the *1987 Census of Agriculture*, the *1987 Census of Construction Industries*, the *1987 Census of Mineral Industries*, as well as *County Business Patterns, 1988: United States*, and *County Business Patterns, 1988: Tennessee.*

Dr. Netzer used employment figures as an allocator to convert national economic data into an estimate of the market value of business inventories, locally assessed machinery and equipment, and locally assessed farm machinery and livestock in Tennessee as of December 31, 1988. One of Dr. Netzer's assumptions is that the economic characteristics of firms in a given type of business tend to be the same in different parts of the country. The witness computed a total estimated market value for commercial and industrial personal property in Tennessee in an amount in excess of $47 billion, including business inventories and agricultural personal property.

On cross-examination, the witness stated that he was not an appraiser and had not examined or contacted any business in Tennessee in regard to their machinery and equipment personal property. Dr. Netzer also stated that there had been no independent verification of his results and that no one else had used his particular methodology to estimate property values in a state other than for use in 4–R Act litigation. No tax administrators or professional appraisers use his methodology to his knowledge. Much of Dr. Netzer's national economic date is self-reporting and no audit is made to verify its accuracy. It was admitted that his nationwide figures had improperly included items classified as personalty which were in fact items of fixtures, and that he had made no attempt to exclude them in deriving his Tennessee estimate of personal property. One of Dr. Netzer's basic premises was that the ratio of the number of employees per equipment would be the same in any part of the country as in Tennessee. Dr. Netzer included agricultural machinery and equipment and livestock in his estimate even though such property is exempt by statute.

An expert witness for the defendant, Dr. William Fox, a professor of economics at the University of Tennessee and research director at the Center for Business and Economic Research at the University, testified that he had reviewed Dr. Netzer's approach. Dr. Fox contested Dr. Netzer's central assumption that the amount of equipment or capital plus the amount of inventories per worker is the same in Tennessee as in the rest of the nation. Dr. Fox concluded that Dr. Netzer's methodology and assumptions were faulty in several respects: (1) the methodology is inappropriate for valuing property for tax purposes because equipment used per employee could be lower in Tennessee than the U.S. average, causing the methodology to overstate personal property values in Tennessee, (2) the industries used by Dr. Netzer generally are one and two digit industries as given in the Standard Industrial Code

and given the different technologies and the wide variety of products produced by these firms in the one and two digit industries it is unlikely that the Tennessee firms in these same industry groupings would have the same production function as the same industries in the U.S. as a whole, and (3) the very location of the employment and equipment measures are not done for tax purposes but are substantially under the discretion of the firm. He further noted that the very assumptions that underlie the Netzer analysis are incorrect, the data was not developed for use at the state level, and the data was never intended to be used in the kind of allocator system used by Dr. Netzer. The particular technique of using national data and allocating it to the State of Tennessee according to Dr. Fox is unacceptable as a measure of the value of commercial and industrial personal property in Tennessee.

Dr. Harry A. Green, Executive Director of the Tennessee Advisory Commission on Intergovernmental Relations, also testified for the defendant, as an expert in the field of economics and public finance. Dr. Green stated that in his opinion Dr. Netzer's methodology was inaccurate and inappropriate for estimating personal property for taxation purposes in Tennessee. Among the flaws noted in Dr. Netzer's methodology was that the data relied upon by Dr. Netzer included a census of large firms but only a survey of small firms, thus incorporating potentially significant errors in the reporting process. Dr. Green further noted that the Standard Industrial Classifications used by Dr. Netzer included 61 three and four digit categories of industries found in the United States as a whole but not in Tennessee. Use of such overinclusive industrial categories by Dr. Netzer tended to overvalue personal property in Tennessee. Dr. Green then used the Netzer approach to value railroad personal property in Tennessee. The Netzer approach yielded a value of railroad personal property in Tennessee in the amount of over $630 million while the Public Service Commission had placed a value of about $157 million on the same property. A similar comparison was made for the specific

plaintiff railroad, CSXT. Utilizing the Netzer approach the value of CSXT's rail transportation personal property would be over $249 million while the Public Service Commission had placed a value of $62 million on plaintiff's same personal property. The Netzer approach yielded a value four times the actual value placed on the personal property by the Public Service Commission. The parties have stipulated and agreed that the Public Service Commission has accurately valued the plaintiff's railroad property at 100% of market value for the 1990 tax year. Dr. Green concluded that if the Netzer approach overvalues railroad property by this magnitude then it must also significantly overvalue the estimate of all personal property in the State of Tennessee.

Mr. Robert Gloudemans also testified for the defendant, as an expert in the field of ratio studies and personal property appraisal. In his opinion, Dr. Netzer's approach is not valid for estimating the total market value of property in Tennessee. Mr. Gloudemans noted numerous flaws in Dr. Netzer's approach and in the underlying data, and made an independent analysis in regard to data classification problems regarding whether the statistics used by Dr. Netzer included fixtures as personal property rather than as real property. Dr. Netzer's exact approach was applied using national data as to improvements on realty rather than machinery and equipment. Government sources give both data for personal property and the value of structures. This approach yielded a value for improvements to realty in Tennessee as of December 31, 1988, in the amount of $18,707,000,-000. The actual value reported by the Division of Property Assessments was $23,900,-000,000 for improvements. In addition to the inaccuracy of the approach, this confirmed Mr. Gloudemans' observation that in the reporting method used in the federal data some improvements or realty were actually reported as personalty. Thus, the data used by Dr. Netzer incorrectly overstated the amount of personal property in Tennessee.

Mr. Barry Murphy, a Certified Assessment Evaluator, Director of Assessments for the Tennessee Public Service Commission, also testified that Dr. Netzer's approach to valuing personal property in Tennessee is not a recognized appraisal methodology and would not be used by him in valuing railroads for property taxation purposes.

The burden is upon the plaintiff, as the party attacking the accuracy of the State Board's values and sales ratios, to show by a preponderance of the evidence what the accurate values are. *Burlington Northern R.R. Co. v. Bair,* 766 F.2d 1222, 1226 (8th Cir.1985). "In evaluating the evidence the District Court should give due deference to the [State Board's] expertise in valuation." *Burlington Northern R.R. Co. v. Bair, supra,* at 1226.

Based upon the significant flaws in the approach used by Dr. Netzer as noted by defendant's expert witnesses, and the clearly erroneous results such an approach renders if applied to the railroads, this Court must conclude that plaintiffs have failed by a preponderance of evidence to show that the approach used by Dr. Netzer produces an accurate estimate of the market value of commercial and industrial personal property in Tennessee.

Plaintiff also asserts that Tennessee's scheme of personal property taxation runs afoul of Section 306 by exempting certain personal property from taxation.

In Tennessee certain classes of personal property are uniformly exempted from ad valorem taxation. The legislature's authority to exempt classes of personal property from taxation is constitutionally based. Tennessee Constitution, Article 2, Section 28 provides:

all property real, personal or mixed shall be subject to taxation, but the Legislature may except such as may be held by the State, by Counties, Cities or Towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary, or educational, and shall except the direct prod-

uct of the soil in the hands of the producer, and his immediate vendee, and the entire amount of money deposited in an individual's personal or family checking or savings accounts.

Such section further provides that:

the Legislature may levy a gross receipts tax on merchants and businesses in lieu of ad valorem taxes on the inventories of merchandise held by such merchants and businesses for sale or exchange.

The Tennessee Legislature, like the legislatures of other states, has enacted several personal property tax exemptions. For example, business inventories, farm and non-business personal property are exempt from personal property tax. The industrial and commercial businesses whose business inventories are exempted from personal property tax must pay a Business Tax. However, railroads are exempt from the Business Tax.

Not one of the exemptions enacted by the Tennessee Legislature singles out railroads for separate treatment. Instead all taxpayers, including the plaintiff herein, who own exempt property receive the applicable personal property tax exemption. Thus, if the plaintiff railroad owns property within a class of exempt property, it is treated as any other taxpayer and the exempt property is not taxed.

Plaintiff's position is that under 49 U.S.C. § 11503(b)(4) of the 4–R Act, the Tennessee Legislature may not grant personal property exemptions to classes of personal property owned by some commercial and industrial taxpayers unless the plaintiff is also able to take full advantage of the exemptions. Consequently, since plaintiff does not own certain classes of exempt personal property, plaintiff contends that it is discriminated against under 49 U.S.C. § 11503(b)(4).

Plaintiff, however, does not seek to be treated the same as similarly situated taxpayers or the same as all other commercial and industrial taxpayers. Rather, plaintiff seeks preferential treatment. Plaintiff wants this Court to mandate preferential treatment favoring it over similarly situated taxpayers, including other commercial

and industrial taxpayers. The Federal Congress in enacting the 4–R Act did not intend such a result.

Plaintiff's personal property tax claim is based upon 49 U.S.C. § 11503(b)(4), which recodified § 306(1)(d) of the 4–R Act. Section 11503(b)(4) provides that a state may not "impose another tax that discriminates against a rail carrier ..."

On its face, § 11503(b)(4) refers to any tax *other than a property tax.* Section (b)(4), the last in a series of prohibited practices, follows §§ (b)(1) through (b)(3) which exclusively address property taxes. Because § (b)(4) follows three sections exclusively addressing property taxes, the "any other tax" language unambiguously relates to taxes other than property taxes. This plain reading of § 11503(b)(4) comports with the Supreme Court's ruling in *Burlington Northern Railroad Company v. Oklahoma Tax Commission,* 481 U.S. 454, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987) indicating that the express meaning of the 4–R Act should be interpreted on its face where the terms of the statute are unambiguous.

The "any other tax" wording in § 11503(b)(4) compels the conclusion that such section applies only to taxes other than property taxes.[1] *See, Kansas City Southern Railway Co. v. McNamara,* 817 F.2d 368, 373 (5th Cir.1987). To conclude otherwise requires interpreting the word "other" out of § (b)(4). Therefore, plaintiff's assertions of a violation of § (b)(4) by the personal property exemptions contained in Tennessee law is contrary to the plain meaning of such section.

Plaintiff relies upon three cases out of the Eighth Circuit in support of its position that Tennessee's personal property exemptions for business inventories and farm property violates § (b)(4) of the 4–R Act, *i.e., Burlington Northern Railroad Co. v. Bair,* 584 F.Supp. 1229 (S.D.Iowa 1984), *aff'd in part and remanded in part,* 766 F.2d 1222 (8th Cir.1985); *Ogilvie v. North Dakota Board of Equalization,* 657 F.2d 204 (8th Cir.1981); *Trailer Train Co. v. Leuenberger,* CV 87–L–29 (D.Neb. 12/11/87), *aff'd* 885 F.2d 415 (8th Cir.1988).

The tax systems in these Eighth Circuit cases are factually distinguishable from the tax system in Tennessee. For example, in *Bair,* the State of Iowa isolated railroads as targets of taxation by adopting statutory personal property tax rollbacks and credits for almost all taxpayers except railroads resulting in exempting 95% of the personal property from taxation. In *Ogilvie,* North Dakota exempted the personal property of locally assessed businesses from taxation. In *Leuenberger,* by statute exemptions applied to 75% of the commercial and industrial property in Nebraska. In contrast, the Tennessee system grants exemptions to classes of personal property regardless of the type of taxpayer. The plaintiff has not shown that Tennessee's legislature enacted any of its personal property tax exemptions to target railroads for taxation.

Plaintiff has also called the Court's attention to the recent Ninth Circuit case of *ACF Industries v. Department of Revenue of the State of Oregon,* 961 F.2d 813 (9th Cir.1992). In *ACF Industries,* the court noted that "The most natural reading of section 306(1)(d) is that the statute is violated by any exemption given to other taxpayers but not to railroads." *ACF Industries,* 961 F.2d at 822. Further, the Ninth Circuit stated:

> We agree with the Eighth Circuit that any exemption not also available to railroads violates the statute, with the possible application that a *de minimis* level of exemption available to other taxpayers may not state a claim under section 306(1)(d).

961 F.2d at 822.

Consequently, when a personal property exemption is available to railroads it does not violate the prohibition of § 11503(b)(4) as the statute is interpreted in *ACF.* Since railroads do not typically have inventories of merchandise held for sale or exchange

---

1. The legislative history of § 11503(b)(1) to (b)(4) was thoroughly examined in a recent law review article. *See* Laronge, *Property Tax Exemptions Under Section 306 of the 4–R Act,* 26 Will.L.Rev. 635 (1990).

they would not come within the terms of this exemption nor for the farm property exemption. If the plaintiff railroad held this type of property they would be entitled to the exemption. Any other exemptions for noncommercial and nonindustrial property would not be relevant to the comparison class.

For all of the foregoing reasons, the Court holds that the personal property assessments of plaintiff for the year 1990 do not violate the provisions of Section 306. The case is dismissed.