Thomas v. BARNES, et al.,
Appellants–Defendants,

v.

Gerald CLAYTON, et al.,
Appellees–Plaintiffs.

CITY OF GARY, Appellant–
Third Party Plaintiff,

v.

David L. STAPLES, Appellee–
Third Party Defendant.

No. 45A03–9110–CV–314.

Court of Appeals of Indiana,
Third District.

April 28, 1992.

---

Noah L. Holcomb, Jr., Gary, for appellants.

William A. Padula, Munster, for appellees.

STATON, Judge.

Thomas V. Barnes, Mayor of the City of Gary, along with the City, the Board of Public Works and Safety, and other individual officials (hereinafter referred to collectively as "Barnes") appeal a summary judgment in favor of Gerald Clayton, president of the Gary Fraternal Order of Police and member of the Gary Police Department and David Staples (hereinafter referred to collectively as "Clayton").[1] Barnes raises four issues for our review which we consolidate into two:

  I. Whether the trial court erred in finding that Barnes failed to exhaust his administrative remedies to remove Staples as a Commissioner.

  II. Whether the trial court correctly determined on summary judgment that Staples' conviction for obstruction of justice did not evidence bad moral character such as would prevent him from being appointed to the office of police commissioner.

We reverse.

David L. Staples was a commissioner for the Gary Police Civil Service Commission. At some time during his tenure his nephew was arrested for driving while intoxicated, and Staples took items of evidence to be used for the case. He was convicted of obstruction of justice, a Class D felony, on September 20, 1990. As a result of his conviction, Staples resigned his commissioner's position "with prejudice" on October 12, 1990. Pursuant to Indiana Code 35–50–2–7, Staples was sentenced as a Class A misdemeanant on October 19, 1990.

Due to Staples' resignation, his position on the Commission was vacant and an election was held in the police department to obtain a nomination for the vacancy.[2] On October 30, 1990, Staples was again elected to the position, but Mayor Barnes refused to appoint him to the position, citing his lack of faith in Staples' moral character.

---

1. Barnes' Reply Brief contains an "Appendix" which consists of the entire text of the Appellant's Brief. A.R. 8.2(A)(4) permits "a separately bound appendix for submission of record or other material deemed useful." However, we do not consider another copy of the Appellant's Brief to be "useful," and in light of our concern for the conservation of our scarce natural resources, we wish to discourage this practice.

2. Pursuant to statute, two members of the Commission must be elected by the active members of the department. IC 36–8–3.5–6. Staples was nominated by the police department.

By memo, the Board of Public Works informed the department that another election was to be held, and another election was scheduled.

Clayton brought this action, seeking an injunction restraining Barnes from causing further meetings in the police department for nominations to fill the vacancy and an order causing Barnes to appoint Staples to the Commission. The trial court granted the Commission's motion to intervene, and the Commission filed its complaint seeking declaratory relief as to Staples' status. Barnes filed a third-party complaint seeking an injunction enjoining Staples from participating in Commission business and a declaratory judgment as to whether obstruction of justice is a crime of moral turpitude which disqualified Staples from serving as a commissioner. Staples was named as a third-party defendant. Motions for summary judgment were filed and the trial court entered judgment for Clayton and Staples.

On an appeal from a summary judgment, we must determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. *Shuamber v. Henderson* (1991), Ind., 579 N.E.2d 452, 454. Any doubt as to a fact, or an inference to be drawn, is resolved in favor of the nonmoving party. *Id.* Summary judgment will be affirmed if it is sustainable upon any theory supported by the record. *Kolczynski v. Maxton Motors Inc.* (1989), Ind.App., 538 N.E.2d 275, 276, *transfer denied.*

### I.

*Exhaustion of Administrative Remedies*

In Conclusion of Law No. 2, the trial court found "[t]hat the Ordinance and State law prescribe a method for removal of members found after hearing not to be qualified." Record, p. 136. Gary Ordinance No. 5881 states in relevant part:

The board may remove any member of the commission at any time for malfeasance, nonfeasance, removal of residence from the city, or incapacity. Removal and subsequent appeals shall be in the same manner and under the same rules

of procedures [sic] as members of the police department of such cities [sic] are now or may hereafter be removed.

*Id.* at § 2(d), Record, p. 13. Indiana Code 36–8–3.5–7(c) provides:

A commissioner serves at the pleasure of the appointing or electing authority and may be removed at any time. In the case of a commissioner elected by the department, the safety board shall call a meeting of the active members of the department under the procedures specified in section 4 of this chapter if a recall petition signed by a majority of the active members is submitted to the board.

■ Barnes contends that both the ordinance and the statute speak to the removal of an incumbent commissioner, not to a challenge of the qualifications of a candidate for the post. Not surprisingly, Clayton contends that the ordinance and the statute are the only means by which an individual can challenge the qualifications of a commissioner or a candidate for the Commission, and Barnes must exhaust those remedies before seeking judicial review. We agree with Barnes.

Both of the above provisions clearly refer to the removal of an individual who is already serving as a commissioner. The ordinance allows a commissioner to be removed for substandard performance of his duties or incapacity. The ordinance also permits the board to vacate a commissioner's position upon "removal of residence from the City," implying that the Commissioner previously lived in the City. Thus, the ordinance does not speak to the qualifications of a candidate for the office. Similarly, Indiana Code 36–8–3.5–7(c) unambiguously refers to individuals who have already been elected to the office.

It is a general rule that a party is not entitled to judicial relief until any prescribed administrative remedy has been exhausted. *Wilson v. Bd. of Ind. Employment Security Div.* (1979), 270 Ind. 302, 385 N.E.2d 438, 441, *cert. den.*, 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101. However, the rule does not apply when an administrative procedure and remedy does

not exist or when the remedy is impossible or fruitless and of no value under the circumstances. *Bartholomew County Beverage Co., Inc. v. Barco Beverage Co., Inc.* (1988), Ind.App., 524 N.E.2d 353, 355. The rule does not apply here.

Indiana Code 36–8–3.5–1(b) states in part: Each elected commission member must:

(1) be a person of good moral character; and

(2) except for a member of a fire department having a merit system established under IC 19–1–37.5, not be an active member of a police or fire department or agency.

The statute identifies no administrative procedure by which a candidate's qualifications may be challenged under these standards. We cannot accept Clayton's assertion that one must wait until a candidate is seated as a commissioner before challenging his qualifications pursuant to statute or ordinance. In addition, the standards used to determine whether removal of the commissioner is necessary in the ordinance and section 7 of the act are wholly different from the "good moral character" standard articulated in section 1. We must conclude that there was no available administrative remedy which Barnes could have pursued prior to filing the declaratory judgment counterclaim.[3]

## II.

### *Conviction for Obstruction of Justice .*

Barnes challenges the trial court's conclusion that Staples' conviction for obstruction of justice as a Class A misdemeanor did not disqualify him as a candidate for commissioner. The trial court found:

4. That the conviction of David Staples of Obstruction of Justice, a felony reduced by the Court upon sentencing to a Class A misdemeanor, does not, per se, disqualify said David Staples as a person of good moral character and from acting as a commissioner.

3. We would also observe that it was Clayton, not Barnes, who initiated this lawsuit.

4. Cf. IC 5–8–1–37(b), providing that any public officer convicted of a felony during his term of

Record, p. 136. Clayton counters that since Staples was sentenced as a misdemeanant, rather than a felon, he was not automatically disqualified by operation of law.[4] While stating that the "good moral character" standard "is a relative one, based both on the local standards of the applicant's community and the changing mores of time," Appellee's brief at 5, Clayton argues that the trial judge was justified in entering summary judgment against Barnes because conviction of a misdemeanor does not evidence bad moral character.

■ The question here turns upon the meaning of "good moral character," a term which is not defined by statute. When construing a statute, we examine the statute as a whole, giving a common and ordinary meaning to the words used. *Matter of Lawrance* (1991), Ind., 579 N.E.2d 32. In the context of attorney discipline, our supreme court has stated:

Being of good moral character necessarily implies that the attorney will conform to the moral standards of his profession as provided by law, by oath of office and the code of ethics of the legal profession.

*Nolan v. Brawley* (1969), 251 Ind. 697, 244 N.E.2d 918, 922, *reh'g denied.* We divine a similar meaning in the context of a police commissioner. While a public officer who has been convicted of a felony cannot retain his office,[5] this does not mean that one who is convicted of a misdemeanor or is sentenced as a misdemeanant automatically remains qualified to serve as a commissioner. The relevant inquiry looks to the candidate's character, regardless of labels which the law has placed on his conduct. Indeed, conduct which is not the subject of a conviction may yet be relevant for the purpose of examining the candidate's moral character, and conduct which has earned a criminal penalty may not be indicative of bad moral character. The inquiry is fact-sensitive and should be conducted in light of the office which the candidate seeks.

office shall be removed from office by operation of law when sentenced.

5. See footnote 4, *supra.*

At the summary judgment hearing, Barnes introduced into evidence certified copies of the minute sheet of Staples' criminal case and the sentencing order from the court. Barnes also sought to introduce evidence regarding the nature of the conduct for which Staples was convicted through the testimony of Edward Irons, a police officer, but the judge refused to consider that evidence. Barnes tendered the following written offer of proof:

> David L. Staples came to a restricted area of the police station where Staples' nephew was being held under arrest for suspicion of causing serious bodily injury while driving under the influence. Irons also had a copy of the nephew's blood alcohol content from a hospital, and several beer cans taken from the nephew's car at the scene of the accident. Irons was also employed as a security person for the public schools; Staples, as head of security, was Irons' superior. Staples approached Irons, spoke with Irons, and thereafter took the blood alcohol printout, the beer cans, and his nephew from the police station. Although Irons was investigating the accident and Staples had no official reason to take the printout and beer cans, Irons never saw the printout or the beer cans again. Irons testified to all this at Staples' trial, at which Staples was convicted of obstruction of justice.

Record, pp. 129–130. This evidence speaks to Staples' misuse of his position as a police commissioner, and was certainly relevant to the determination of good moral character. It is especially relevant because it concerns his conduct while he was in the precise office for which he is now a candidate. The trial court's refusal to consider this evidence was error.

Clayton makes much of the sentencing court's statement that "the risk that the defendant will commit another crime is low because the defendant has led an exemplary life." Record, p. 139. Clayton contends that this evidence is indicative of Staples' good moral character, and supports the trial court's grant of summary judgment. At best, however, this evidence creates an issue of fact as to Staples' character, which renders summary judgment improper. We would also note that in examining the mitigating factors in support of its decision to sentence Staples as a misdemeanant rather than as a Class D felon, the sentencing court stated, "The crime was the result of circumstances unlikely to recur in that he has resigned from the Gary Police Commission." Record, p. 139. Soon after sentencing, Staples again became a nominee for the post of commissioner.

Having found that there is a material issue of fact which is unresolved, we hold that the trial court erroneously granted summary judgment in favor of Clayton.

Reversed.

RATLIFF, C.J., and HOFFMAN, J., concur.