Thomas V. BARNES, et al.,
Appellants–Defendants,

v.

Gerald CLAYTON, et al.,
Appellees–Plaintiffs,

CITY OF GARY, Appellant–
Third–Party Plaintiff,

v.

David L. STAPLES, Appellee–
Third–Party Defendant.

No. 45A05–9303–CV–91.

Court of Appeals of Indiana,
Fifth District.

Nov. 22, 1993.

Noah L. Holcomb, Jr., Gary, for appellants-defendants.

William A. Padula, James J. Krajewski, Munster, for appellees-plaintiffs.

BARTEAU, Judge.

Thomas Barnes, Mayor of the City of Gary, along with the City of Gary, the Board of Public Works and Safety, and others (collectively "Barnes") appeal the trial court's finding that David Staples is fit to serve as a Commissioner of the Gary Police Civil Service Commission. Barnes contends that Staples is not fit to serve in

this position because he has been convicted of obstruction of justice and that the trial court's order did not comply with this court's decision in *Barnes v. Clayton* (1992), Ind.App., 590 N.E.2d 1112 (*Barnes I*).

We affirm.

## FACTS AND PROCEDURAL HISTORY

This is the second appeal to this court in this dispute. The facts as reported by this court in *Barnes I* are as follows:

David L. Staples was a commissioner for the Gary Police Civil Service Commission. At some time during his tenure his nephew was arrested for driving while intoxicated, and Staples took items of evidence to be used for the case. [Staples] was convicted of obstruction of justice, a Class D felony, on September 20, 1990. As a result of his conviction, Staples resigned his commissioner's position "with prejudice" on October 12, 1990. Pursuant to Indiana Code 35–50–2–7, Staples was sentenced as a Class A misdemeanant on October 19, 1990.

Due to Staples' resignation, his position on the Commission was vacant and an election was held in the police department to obtain a nomination for the vacancy. On October 30, 1990, Staples was again elected to the position, but Mayor Barnes refused to appoint him to the position, citing his lack of faith in Staples' moral character. By memo, the Board of Public Works informed the department that another election was to be held, and another election was scheduled.

Clayton [president of the Gary Fraternal Order of Police and member of the Gary Police Department and David Staples ("Clayton")] brought this action, seeking an injunction restraining Barnes from causing further meetings in the police department for nominations to fill the vacancy and an order causing Barnes to appoint Staples to the Commission. The trial court granted the Commission's motion to intervene, and the Commission filed its complaint seeking declaratory relief as to Staples' status. Barnes filed a third-party complaint seeking an injunction enjoining Staples from participating in Commission business and a declaratory judgment as to whether obstruction of justice is a crime of moral turpitude which disqualified Staples from serving as a commissioner. Staples was named as a third-party defendant. Motions for summary judgment were filed and the trial court entered judgment for Clayton and Staples.

590 N.E.2d at 1113–14 (footnote omitted).[1]

The *Barnes I* court reversed the grant of summary judgment in favor of Clayton and Staples, finding genuine issues of material fact remained as to Staples' moral character. On remand, the trial court considered additional evidence of the circumstances surrounding Staples' conviction as well as evidence of Staples' character in general. The trial court determined that Staples is eligible to serve as a commissioner.

As in every dispute, the evidence is conflicting. However, we must consider the evidence most favorable to the trial court's judgment, which is as follows: In December, 1988, Gary Police Officer Edward Irons investigated a personal injury accident in which Lanell Chambers, Staples' nephew, was involved. Irons removed several beer cans, empty and full, from Chambers' car. He then took Chambers to the hospital for a blood alcohol test. Chambers' BAC was "over the limit to be classified as intoxicated." (R. 207). Irons placed Chambers under arrest at the hospital and then transported Chambers, along with the beer cans and a print-out of the blood alcohol test results, back to the police station. Irons took Chambers to the "traffic room" to write up a report.

Upon learning that his nephew had been arrested, Staples went to the police station. The desk sergeant on duty at the time gave Staples permission to go back to the traffic room, an area usually restricted to police

1. The Commission withdrew as third-party intervenor before trial and does not participate in this appeal.

officers. Staples testified that Irons told him he had no use for the beer cans and that Chambers could be released to Staples' care that evening.[2] Staples then left the station with his nephew and the cans; however, he returned the cans to the police after being requested to do so by the prosecuting attorney. Chambers was later convicted.[3]

James Fleming, a former Gary police officer, testified without objection that Staples was a person of "extremely high" good moral character. Fleming also testified that the police department usually destroyed cans found in cars because of space constraints in the evidence room. Robert Thomas, who has known Staples for about forty years, testified, again without objection, that Staples was of good moral character.[4]

### DISCUSSION

■ The trial court *sua sponte* entered findings of fact and conclusions of law. Therefore, we will treat the judgment as a general judgment with the findings and conclusions controlling only as to the issues they cover. *Quebe v. Davis* (1992), Ind.App., 586 N.E.2d 914, 917. A general judgment will be affirmed upon any legal theory consistent with the evidence. *Id.* This court may neither weigh the evidence nor judge the credibility of the witnesses. *Id.*

2. Irons also testified that Staples took the results of the blood/alcohol test; however, Staples denied this at trial. There is no indication in the record as to what facts formed the bases of Staples' criminal conviction, nor does Barnes argue that the trial court in the instant case was bound by anything determined in the criminal proceedings. The trial court here found that the evidence was conflicting as to whether Staples took the test results.

3. There is no indication of what crime Chambers was convicted.

4. Barnes also placed into evidence at trial the evidence that was presented at the summary judgment hearing. "Specifically ... the written evidence that was admitted into evidence." (R. 270). It is unclear to what evidence Barnes refers. The trial court's order on the motion for summary judgment provides:

The Gary Police Civil Service Commission is the merit commission for the Gary Police Department and is responsible for, among other things, police disciplinary matters. One of the requirements for the commissioners is that they must be of "good moral character." I.C. 36–8–3.5–6(b). This dispute began when Staples was elected by police officers to fill the vacancy on the Commission created by his resignation and the mayor of Gary refused to appoint him due to what the mayor believed was a lack of good moral character on Staples' part.

■ As noted in *Barnes I,* the phrase "good moral character" is not defined in the statute. 590 N.E.2d at 1115. However, the *Barnes I* court, analogizing the phrase to the context of attorney discipline, gleaned the following meaning of the phrase:

> While a public officer who has been convicted of a felony cannot retain his office, this does not mean that one who is convicted of a misdemeanor or is sentenced as a misdemeanant automatically remains qualified to serve as a commissioner. The relevant inquiry looks to the candidate's character, regardless of labels which the law has placed on his conduct. Indeed, conduct which is not the subject of a conviction may yet be relevant for the purpose of examining the candidate's moral character, and conduct which has earned a criminal penalty may not be indicative of bad moral character. *The inquiry is fact-sensitive and*

Arguments were heard on the various issues as presented by each party.... No evidence was to be presented, although Attorney Holcomb made an oral offer to prove concerning the conviction of David Staples, which offer was denied by the court and ordered reduced to writing.

\*   \*   \*   \*   \*   \*

Attorney Richard James, pursuant to the request of the Court, thereafter filed a record of the proceedings in State of Indiana vs. David Staples, Cause No. 45G02–8906–CF–001003, along with the findings of the judge at the sentencing, at which the Court punished Staples for a Class A misdemeanor.

(R. 139–40). Appearing after this order is a copy of Staples' sentence and the docket sheets in the criminal proceedings; however, a transcript of the criminal proceedings is not included in the record.

*should be conducted in light of the office which the candidate seeks.*

*Id.* (emphasis supplied, footnote omitted). Thus, one cannot say that a misdemeanant is, as a matter of law, of bad moral character and therefore not qualified to serve as a commissioner.

Barnes argues that the trial court failed to analyze the facts in a manner consistent with the court's decision in *Barnes I.* Barnes argues that once the trial court found that Staples had committed a crime, "the next inquiry should be is this conduct logically related to the position of Police Commissioner?" Appellant's Br. 3–4. According to Barnes, the court failed to make this inquiry and instead improperly considered other evidence, such as the sentencing report and evidence of Staples' character, in determining Staples' qualifications.

 We do not agree with Barnes' reading of *Barnes I.* The directive from this court in *Barnes I* was that the trial court should consider a number of factors, such as Staples' conviction and how it reflects on his position, in deciding whether Staples was qualified for office. We also note that Barnes did not object at trial to the additional evidence of Staples' moral character, and it appears from the record that Barnes placed into evidence a copy of the sentencing order. He may not now argue that this evidence was improperly considered by the trial court.

Barnes suggests that the crime of which Staples was convicted establishes moral turpitude on its face. He cites *Matter of Oliver* (1986), Ind., 493 N.E.2d 1237, 1240, in which the court stated:

Commission of some crimes establishes moral turpitude on its face. These include crimes that necessarily involve an intent to defraud, intentional dishonesty for personal gain, or behavior particularly repugnant to accepted moral standards. Commission of other offenses may or may not involve moral turpitude, and thus conviction of other offenses is not grounds for discipline without addi-

tional proof of circumstances surrounding the offense.

We have already stated, both in this opinion and in *Barnes I,* that Staples' conviction was one factor for the trial court to consider in reaching its determination of his qualifications. It is the duty of the trial court to weigh the evidence in this regard and we will not substitute our judgment for that of the trial court.

AFFIRMED.

SHARPNACK, C.J., and SHIELDS, J., concur.