**UNION CARBIDE CORP.,**
**et al., Plaintiffs,**

v.

**STATE BOARD OF TAX COMMISSION-**
**ERS OF the STATE OF INDIANA,**
**et al., Defendants.**

**No. IP 91–1711–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Dec. 8, 1993.

John F. Prescott Jr., Ice, Miller, Donadio & Ryan, Indianapolis IN, for Union Carbide Corp., Agri Financial Services, Inc., Cargill, Inc., Celtran, Inc., Chrysler Rail Transp., GLNX Corp., Mobil Oil Corp., Tennessee Eastman Co., Vista Chemical Co., Quantum Chemical Corp.

Terrence J. Benshoof, Kanter & Mattenson, Ltd., Chicago, IL, for Tennessee Eastman Co., Vista Chemical Corp., Quantum Chemical Corp.

Marilyn S. Meighen, Deputy Atty. Gen., Indianapolis, IN, for State Bd. of Tax Com'rs, Zorn, C. Kurt Zorn, Sandra K. Bickel, Gordon E. McIntyre, Dept. of Indiana State Revenue, Kenneth E. Miller.

Barton T. Sprunger, Ice, Miller, Donadio & Ryan, Indianapolis, IN.

Pamela Carter, Atty. Gen., Indianapolis, IN.

### ENTRY AND ORDER GRANTING PLAINTIFFS' 6/28/93 MOTION TO COMPEL.

FOSTER, United States Magistrate Judge.

This matter is before the Court on the plaintiffs' June 28, 1993 motion for an order under Fed.R.Civ.P. 37 compelling the defendants to answer the plaintiffs' interrogatories and requests for admissions. For the reasons set forth below, the Court grants the motion and orders the defendants to respond. Because the two groups of defendants object on separate grounds, we address their objections separately.

### I. Background.

In this suit, ten corporate owners of rail transportation property (collectively referred to as "the Companies")[1] claim that Indiana's *ad valorem* taxation of the their indefinite-situs distributable property under Ind.Code § 6–1.1–8–12(b) amounts to discriminatory taxation in violation of § 306 of the Railroad Revitalization and Regulatory Reform Act of 1976, Pub.L. 94–210, 90 Stat. 31, 54–55, Feb. 5, 1976, recodified at 49 U.S.C. § 11503,

---

1. The defendants agree that the Companies qualify as "railroad car companies" under Indiana Code § 6–1.1–8–2(10), Complaint ¶ 15; Answer ¶ 15, and are subject to taxation as public utilities under Indiana Code § 6–1.1–8–1 *et seq.,* Complaint ¶¶ 20–22; Answer ¶¶ 20–22.

Pub.L. 95–473, 92 Stat. 1337, 1445, Oct. 17, 1978, as amended, 49 U.S.C.A. § 11503 (1993 Partial Revision pamphlet).[2] The Companies have sued the State Board of Tax Commissioners and its members (collectively referred to as "the Board") and the Department of State Revenue and its Commissioner (collectively referred to as "the Department") seeking declaratory and injunctive relief against the Board's and Department's assessing, levying, or collecting indefinite-situs distributable property taxes under the challenged Indiana statutes.

Except as otherwise provided, Indiana assesses and taxes tangible property only if it is located within the jurisdiction of the state on March 1st of each year. I.C. §§ 6–1.1–2–1, 6–1.1–1–2, 6–1.1–1–11, 6–1.1–1–15, 6–1.1–1–19. Tangible property is assessed at 33⅓ percent of its "true tax value." I.C. § 6–1.1–1–3. In the case of public utility companies, however, including the plaintiff "railroad car companies", Indiana classifies their tangible property into fixed, definite-situs distributable, and indefinite-situs distributable property, I.C. § 6–1.1–8–5, and assesses their indefinite-situs distributable property on an apportionment basis. Railroad car companies' indefinite-situs distributable property is assessed at 33⅓ percent of the fair market value of "the average number of cars owned or used by the company within this state during the twelve (12) months of the calendar year preceding the year of assessment," I.C. §§ 6–1.1–8–12(b) (formula), 6–1.1–8–25, instead of the fair market value of only that property located within the jurisdiction of the state on March 1st. *See Thorntown Telephone Co., Inc. v. State Board of Tax Commissioners,* 588 N.E.2d 613, 614 (Ind.Tax 1992).

The Board must notify a railroad car company of its tentative assessments on or before September 1st of each year. I.C. § 6–1.1–8–28(a). The company then has ten days in which to file objections and request a hearing before the Board. I.C. § 6–1.1–8–28(b). The Board must hold a hearing and give notice of its final assessment before September 30th. I.C. § 6–1.1–8–29. The Board certifies the tax to the Department for collection and payment is due on or before December 31st. I.C. § 6–1.1–8–35(b). The company may appeal the final assessment to the Indiana Tax Court within twenty days of the date of the Board's notice. I.C. § 6–1.1–8–30. The levied tax must be paid pending appeals unless its collection has been enjoined. I.C. § 6–1.1–8–36. Appeal from the Tax Court's decision runs directly to the Indiana Supreme Court. I.C. § 33–3–5–15.

On or about August 30, 1991, the Board issued notices to the Companies of its tentative assessments of their indefinite-situs distributable property. The Companies timely filed their objections and an administrative hearing was held on September 24, 1991. The Companies stipulated to the Board that the only issue presented was the legality of Indiana's *ad valorem* taxation of the Companies' railroad cars (which are indefinite-situs distributable property) under the 4–R Act. (Board's "Findings of Fact, Conclusions of Law and Final Order" (hereinafter, "Board's Decision"), p. 3, attached as Exhibit 1 to Defendants' February 18, 1992 Motion to Dismiss). At the hearing, the Companies argued that their property should be assessed in the same manner as non-public utilities, *i.e.,* it should be assessed only if it is present in the state on March 1st. *Id.* On September 27, 1991, the Board issued its decision that the Companies' tentative assessments did not violate the 4–R Act. Instead of pursuing review in the Indiana Tax Court, the Companies filed this suit on December 26, 1991. The Companies paid their assessed taxes before the December 30, 1991 due date.

---

**2.** Because the recodification of § 306 of the 4–R Act was not intended to effect any substantive changes in its provisions, Pub.L. 94–473, preamble and § 3(a), 92 Stat. at 1337, 1466; *Burlington Northern Railroad Co. v. Oklahoma Tax Commission,* 481 U.S. 454, 457 n. 1, 107 S.Ct. 1855, 1858 n. 1, 95 L.Ed.2d 404 (1987), the language of the original act should be preferred over the language of the codification. *ACF Industries,*

*Inc. v. Department of Revenue of the State of Oregon,* 961 F.2d 813, 815–16 n. 1 (9th Cir.1992), cert. granted, —— U.S. ——, 113 S.Ct. 2330, 124 L.E.2d 242 (1993); *Clinchfield Railroad Company v. Lynch,* 784 F.2d 545, 547 n. 1 (4th Cir. 1986); *Atchison, Topeka and Santa Fe Railway Co. v. Lennen,* 732 F.2d 1495, 1497 (10th Cir. 1984). This Entry will cite to the "4-R Act", "Act", or "§ 11503".

Congress passed § 306 of the 4–R Act to combat what it found to be significant discriminatory taxation of rail carriers by the States. *Union Carbide Corp. v. State Board of Tax Commissioners of the State of Indiana,* 992 F.2d 119, 121 (7th Cir.1993). District courts are granted jurisdiction to enforce its provisions concurrent with any already-existing jurisdiction enjoyed by other federal or state courts. Section 306 provides, in relevant part:

(b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

(1) assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.

(2) levy or collect a tax on an assessment that may not be made under clause (1) of this subsection.

(3) levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

(4) impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Commission under subchapter I of chapter 105 of this title.

(c) Notwithstanding section 1341 of title 28 [Tax Injunction Act of 1937] and without regard to the amount in controversy or citizenship of the parties, a district court of the United States has jurisdiction, concurrent with other jurisdiction of courts of the United States and the States, to prevent a violation of subsection (b) of this section. Relief may be granted under this subsection only if the ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent, the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction. The burden of proof in determining assessed value and true market value is governed by State law. If the ratio of the assessed value of other commercial and industrial property in the assessment jurisdiction to the true market value of all other commercial and industrial property cannot be determined to the satisfaction of the district court through the random-sampling method known as a sales assessment ratio study (to be carried out under statistical principles applicable to such a study), the court shall find, as a violation of this section—

(1) an assessment of the rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the assessed value of all other property subject to a property tax levy in the assessment jurisdiction has to the true market value of all other commercial and industrial property; and

(2) the collection of an ad valorem property tax on the rail transportation property at a tax rate that exceeds the tax ratio rate applicable to taxable property in the taxing district.

49 U.S.C.A. § 11503 (1993 Partial Revision Pamphlet).

In order to resolve the parties' discovery disputes, we must address certain substantive issues relating to the merits and stature of the parties' cases in chief. Any determinations of these issues herein are for the purposes of this motion only and do not constitute dispositive rulings on the merits. In addition, because the parties' views of the framework for this litigation differ significantly, and there have been no dispositive rulings by the Court thereon, we address alternate basis for our conclusions.

## II. Objection by the Board.

The Board contends that the Companies' requested discovery is irrelevant and inad-

missible.[3] Its argument is based on its construction of the Act's clause providing that "[t]he burden of proof in determining assessed value and true market value is governed by State law." § 11503(c). The Board asserts that this clause means that the Court must apply Indiana's rules governing judicial review of Board decisions—must, in effect, sit in the stead of the Indiana Tax Court. Specifically, because Indiana's burden of proof is "inextricably tied to a limited scope of review that has repeatedly and consistently been recognized by the Indiana Tax Court in matters of state taxation," the Board argues, the Court's review is restricted to the administrative record, the evidence and issues which were presented to the Board at the September 24, 1991 hearing. Because the Companies' interrogatories and requests for admission seek information beyond the scope of the Companies' presentation at the hearing, the Board argues that the information is inadmissible at trial, therefore irrelevant and undiscoverable. The Board may also be contending that, because the Companies failed to prove the Act's 5 percent ratio variance threshold, § 11503(c), before the Board, the Companies are therefore barred from doing so in this Court.

The Board's objections go the substantive merits of their case in chief. In essence, it objects to the relevancy of the Companies' discovery because it contends that the Court's adjudication of this case is not *de novo*, but restricted to a deferential review of the evidence and issues presented to the Board.[4]

## II. A. Classification of the Companies' claims.

■ The parties dispute the nature of the Companies' claims. The defendants contend that the Companies assert assessment variation claims under § 11503(b)(1) of the Act because they are actually challenging the valuation method utilized by the Board to assess their property—the "statutory method" of apportionment, I.C. §§ 6–1.1–8–12, 6–1.1–8–35—and advocating the adoption of an alternate method—the "assessment date method", I.C. § 6–1.1–2–1. (Defendants' Response p. 4–5). The Companies contend that they allege a violation of § 11503(b)(4): the Board's assessment of their property which is out of the jurisdiction of the state on the assessment date, while not so assessing identical property of other commercial and industrial taxpayers, constitutes "another tax" which discriminates against them as rail carriers. The importance of this dispute lies in the fact that, while it is clear that § 11503(c)'s burden of proof and 5 percent threshold clauses, on which the Board bases its objections, apply to § (b)(1) claims, it is less clear that they apply to § (b)(4) claims.

We agree with the Companies' description of their claim. First, the Companies' Complaint mentions a violation of § (b)(4) only, Complaint ¶¶ 30, 31, 36, 37, pp. 8–9.[5] Second, the Companies do not allege that railroad car companies are assessed at a higher assessment ratio than other companies, § 11503(b)(1), and the statute explicitly applies the same 33½ percent assessment ratio to them as to other companies, I.C. § 6–1.1–8–25.

Third, the purpose and structure of the Act indicates that § (b)(4) is the proper claim. The 4–R Act was intended to combat all forms of discriminatory taxation of railroads. *Ogilvie v. State Board of Equalization of the State of North Dakota*, 657 F.2d 204, 210 (8th Cir.), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981). Section (b)(4) was intended as a catch-all provision, encompassing all forms of discrimination not listed in §§ (b)(1), (b)(2), or (b)(3), including property tax discrimination unre-

---

3. Based on its rationale, the Board may be presumed to be also asserting that the Companies' discovery requests are not reasonably calculated to lead to admissible evidence.

4. The Board does not directly address the standard of review to be applied by the Court, but the rationale of its argument leads to the conclusion that it would be the standard applied by the Indiana Tax Court. *See* I.C. §§ 6–1.1–8–31, –32.

5. Although the Complaint's "Second Cause of Action" is based on the allegation that Indiana's *ad valorem* tax system effectively taxes the Companies' property at over 33½ of its true tax value, Complaint ¶¶ 33–37, it does so in the context of the Companies' property which is within the state on the assessment date of March 1st and it labels this as a violation of § (b)(4) only, *id.*

lated to assessment ratios or tax rates, *ACF Industries, Inc. v. Department of Revenue of the State of Oregon* ("ACF–Oregon"), 961 F.2d 813, 818–20 (9th Cir.1992), *cert. granted,* —— U.S. ——, 113 S.Ct. 2330, 124 L.Ed.2d 242 (1993); *Burlington Northern Railroad Co. v. Bair* ("Burlington–Bair"), 766 F.2d 1222, 1224 (8th Cir.1985), such as exemption discrimination, *see ACF–Oregon,* 961 F.2d at 820; *Burlington Northern Railroad Co. v. Department of Revenue of the State of Washington,* Nos. C89–518(T)WD, C90–5417(T)WD, Findings of Fact, Conclusions of Law, and Order, 1992 WL 201947, *8 (W.D.Wash. Aug. 13, 1992), and other tax benefit discrimination, *ACF–Oregon,* 961 F.2d at 818–21; *Trailer Train Co. v. Leuenberger,* 885 F.2d 415 (8th Cir.1988), *cert. denied,* 490 U.S. 1066, 109 S.Ct. 2065, 104 L.Ed.2d 630 (1989); *Burlington Northern Railroad Co. v. Department of Revenue of the State of Washington,* 783 F.Supp. 1274 Partial Summary Judgment, and Defendants' Motion to Strike, (W.D.Wash.1991). We did not discover any case law involving the precise type of "assessment-date" discrimination alleged in this case, but such conduct can be analogized to the cases of exemption discrimination (not offering rail carriers the same *de facto* exemption for property not located within the state on March 1st) or it may be classified as a new form of discrimination falling under § (b)(4). We conclude, therefore, that the Companies' claim falls under § (b)(4).

## II. B. Discovery Issues.

■ The Board's objection is that because this Court is limited, by the application of Indiana's burden of proof, to reviewing only the evidence and issues presented by the Companies during their administrative hearing, and the Companies' interrogatories and requests for admission go beyond that scope of review, the information requested is inad-missible, not likely to lead to admissible evidence, and irrelevant. The Companies contend that the 4–R Act's burden of proof clause does not compel this Court to apply Indiana's rules on exhaustion of administrative remedies or its standard of judicial review, so the Court is not restricted to reviewing the record of the administrative proceedings. They argue that this Court may and should undertake *de novo* adjudication of their claims.[6]

■ To be discoverable, information need not be admissible at the trial of the cause, but need only be relevant and reasonably calculated to lead to admissible evidence. Fed.R.Civ.P. 26(b); *Federal Deposit Insurance Corp. v. Wise,* 139 F.R.D. 168, 170 (D.Colo.1991). Information is relevant if it has any tendency to make the existence of a material fact more or less probable. *Id..* Information requested must be relevant only to the subject matter of a suit rather than to the technical issues presented by the pleadings, *Alliance to End Repression v. Rochford,* 75 F.R.D. 441, 444 (N.D.Ill.1977); *Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1187 (D.S.C.1974), and may be relevant to any issue that is, or may be, in the case, *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978); *Burton Mechanical Contractors, Inc. v. Foreman,* 148 F.R.D. 230, 231–32 (N.D.Ind.1992). Discovery is not limited to the merits of a case, "for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Oppenheimer Fund,* 437 U.S. at 351, 98 S.Ct. at 2389. Relevance is to be liberally construed, *Miller v. Pancucci,* 141 F.R.D. 292, 296 (C.D.Calif.1992), and given a broader scope than evidentiary relevance. *Federal Savings & Loan Insurance Corp. v. Com-*

---

**6.** The Board's objections have a broad scope. If, as the Board contends, § 11503(c)'s burden of proof clause constrains the Court to adjudicate this case under the same evidentiary and issue restrictions as the Indiana Tax Court exercising administrative review, then perhaps we should not permit discovery at all—at least with respect to the issue of whether the Indiana statutes violate the 4–R Act—because the only admissible trial evidence would be the testimony and exhib-its presented at the hearing. *See Gatling Gun Club, infra* at note 10. We are unaware whether, and under what conditions, the Indiana Tax Court would permit discovery in this case, but we must apply the federal rules which, as indicated in the text *infra,* do not restrict discovery to the merits of the case in chief and apply a more liberal measure of relevance for discovery purposes than for evidentiary purposes.

*monwealth Land Title Insurance Co.,* 130 F.R.D. 507, 509 (D.D.C.1990).

■ In some circumstances, the merits of the claims or defenses in a party's case in chief may affect a court's determination of a motion to compel. When a dispositive motion directed to issues affecting the determination of a motion to compel is pending, a court, in its discretion, may stay consideration of the discovery motion until the dispositive motion is decided. When a dispositive motion is not pending, but the merits of a claim or defense bearing on the relevancy of a discovery request are contested for the first time on a discovery motion, it has been suggested that "[d]iscovery should not be denied because it relates to a claim or defense that is being challenged as insufficient." 8 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2008, p. 44 (1970). However, if the merits of a substantive issue affecting the relevancy of a discovery request are sufficiently clear, a court may proceed to rule on discovery issues in reliance thereon. In this case, no dispositive motion directed to the effect of the 4–R Act's burden of proof clause on this case is pending, but the parties have fully briefed their opposing positions in the instant motion to compel. After reviewing the parties' arguments and the Companies' interrogatories and requests for admission, we have no doubt that the information requested is relevant and would be discoverable in an action for *de novo* judicial adjudication of the State's alleged violations of § 11503(b)(4). The question is whether the Act's burden of proof clause requires a different result.

Several factors convince us that the Companies' motion to compel should be granted. As indicated above, the absence of a pending dispositive motion on the burden of proof issue argues in favor of allowing the discovery. 8 *Federal Practice and Procedure* § 2008, at 44. In addition, as discussed below, the showing and argument supporting the Board's objections are lacking. Finally, as discussed in the next section, the Board's arguments on the meaning and effect of the burden of proof clause lack sufficient merit to prevent discovery of the information sought. I note again that the merits of the parties'

claims and defenses are addressed for the purposes of this motion only; any positions taken herein only guide future discovery absent contrary rulings by the district judge.

The Board argues that the record of the administrative proceedings demonstrates that the Companies' requests exceed the scope of those proceedings, yet the Board failed to submit that record to the Court and we cannot blindly accept the Board's conclusory characterization in the absence of the record or a specification of why each request is beyond the scope of the hearing. The effect of the 4–R Act was the only issue at the hearing and the only issue addressed in the Board's decision. In the absence of the record or specific argument, we are entitled to presume that the Companies addressed all issues relevant to a 4–R Act challenge to their assessments at the hearing. Therefore, no information is undiscoverable because of a failure to exhaust issues. The Board's objection on the basis of a failure to exhaust evidence is addressed below.

## II. C. Review of the Merits.

The Board asserts that the "burden of proof", which § 11503(c) requires this Court to apply, includes not only the traditional assignments of the burdens of production and persuasion, but also, in Indiana, the standard of review to be applied and a restriction of the record to the issues and evidence presented before the Board. The Board may also be arguing that because the Companies failed in the hearing to address or prove a five percent assessment ratio variance as required by § 11503(c), they may not discover evidence in order to do so now. The Board's argument lacks sufficient merit to prevent the Companies' discovery.

## II. C. 1. General objections.

■ The Board's objection to the Companies' discovery based on its interpretation of the burden of proof clause is subject to a few general objections initially.

First, the clause is expressly limited to proofs of two specific facts—assessed value and true market value—and the Companies' discovery is unrelated to proving those facts. The Companies do not challenge the Board's calculations of value but complain of

Indiana's making *any assessment at all* of their indefinite-situs distributable property which is not located within the state on March 1st; thus, the clause should have no effect on their discovery. To the extent that property values are relevant in this case— *e.g.*, in order to establish the ."Statutory Method's" discriminatory impact between railroads and other commercial and industrial taxpayers [7]—there is no indication that the Board's calculations of these values will be contested by the Companies, thus, no foreseeable necessity for the values' "proof", only their collection from Board or Department records. In addition, having reference only to proofs of the two specific valuation facts, the burden of proof clause can't be interpreted to restrict the Companies' proofs of other facts. After reviewing the Companies' interrogatories and requests for admissions, it is clear that at least some of the requested information is not directed to the assessed or true market values of their, or others', indefinite-situs distributable property, and thus would not fall within the orbit of the literal language of the clause. Finally, to the extent that the Board objects to the Companies' discovery because it relates to unexhausted issues as opposed to factual evidence, the clause is expressly inapplicable.

Second, interpreting the burden of proof clause in a way that incorporates a state's substantive and procedural rules for reviewing challenges to discriminatory taxation would frustrate the purposes of the Act.

Congress' purpose in passing the 4–R Act was "to provide the means to rehabilitate and maintain the physical facilities, improve the operations and structure, and restore the financial stability of the railway system of the United States" (4–R Act § 101(a), 45 U.S.C. § 801(a)). One impediment to such financial stability was dis-

criminatory taxation—the House Committee on Foreign and Interstate Commerce had found that railroads were "over-taxed by at least $50 million each year" (H.R.Rep. No. 725, 94th Cong., 1st Sess. 78 (1975)). In light of that finding the Committee went on to state (*id.*) that "[i]n view of the generally poor economic condition of the railroad industry and the effect such economic hardship is having on the ability of the industry to adequately serve our national rail transportation needs, the Committee believes discriminatory property and 'in lieu' taxation should be ended."

To relieve that burden of discriminatory state and local taxation (including the burden of having to pay those taxes first and then having to wait to recover the excessive amounts through suits for refund), Congress provided recourse to the federal courts via Act § 11503....

*Union Carbide*, 992 F.2d at 121. *Accord Cuyahoga Valley Railway Co. v. Tracy*, 6 F.3d 389, 393 (6th Cir.1993). The 4–R Act was "designed to give railroads a 'plain, speedy and efficient remedy' in federal court, since the railroads' attempts to achieve tax equalization in state proceedings had been notoriously inefficient and cumbersome." *Clinchfield Railroad Co. v. Lynch*, 527 F.Supp. 784, 785 (E.D.N.C.1981), *affirmed*, 700 F.2d 126 (4th Cir.1983). By enacting the substantive provisions of the Act and supplying a federal forum, Congress intended to overcome what it determined were procedural and substantive obstacles in the states to combatting discriminatory taxation. *See Atchison, Topeka & Santa Fe Railway v. State of Arizona*, 559 F.Supp. 1237, 1249 (D.Ariz. 1983).[8] The provisions of the Act must be construed consistently with, and in order to give effect to, the Act's purposes. *Trailer*

---

**7.** *But see ACF–Oregon*, 961 F.2d at 822. Rejecting defense arguments that plaintiffs asserting a § (b)(4) claim were required to prove that at least 50 percent of other commercial and industrial taxpayers reaped tax benefits not offered to railroads, the Ninth Circuit held that "the statute is violated by *any* exemption given to other taxpayers but not to railroads." *Id.* Whether the Companies must prove that Indiana's property tax system produces a certain level of differential effect between rail carriers and other commercial and industrial taxpayers in order to prove

discrimination under the Act has not been determined in this case.

**8.** · " 'The Testimony before the Committee indicated that present State procedures to challenge discriminatory State tax assessments are often difficult, time consuming, and not productive of material relief....' " *Atchison–Arizona*, 559 F.Supp. at 1249 (quoting S.Rep. No. 94–630, 91st Cong.2d Sess. p. 608 (1969)).

*Train Co. v. State Board of Equalization,* 697 F.2d 860, 865–66 (9th Cir.), *cert. denied,* 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983). The burden of proof clause is not defined in the Act, but to accept the Board's construction of it as incorporating all of a state's procedural and substantive rules into a 4–R Act action would vitiate the central purpose of the Act to overcome those state rules. It would not be reasonable to conclude that what Congress intended to overcome directly through enacting the cause of action and providing a federal forum, it intended to permit indirectly through the back door of the burden of proof clause. Substantive review under the Act would then become a "mere shadow" of what Congress intended. *See Burlington–Bair,* 766 F.2d at 1226. Whatever the burden of proof clause means, therefore, it cannot have the meaning or effect contended by the Board.

Third, the Board's attempt, through the burden of proof clause, to impose Indiana's rules pertaining to judicial review of administrative actions is inapposite because a 4–R Act action is fundamentally *not* an action for judicial review of an administrative decision but an independent judicial action challenging the legality of state statutes. *See Burlington–Bair,* 766 F.2d at 1226. Thus, even if the Court accepted the Board's construction of the burden of proof clause as incorporating a state's procedures, the applicable rules would be those governing ordinary declaratory or injunctive actions, *id.,* and the Board has not informed the Court what those rules are.

## II. C. 2. Restricted record.

The question whether the burden of proof clause restricts the record in this case to the issues and evidence presented before the Board may be approached in two ways. First, since a record restriction depends on a requirement of exhaustion, we first examine whether this case must be exhausted in federal and Indiana courts. Second, because not every exhaustion requirement leads to a restricted record, we examine whether Indiana would restrict the record in this case even if exhaustion were required.

### a. Exhaustion.

The Board is correct that Indiana law generally requires administrative exhaustion of all issues [9] and evidence [10] in order to obtain judicial review of an agency decision,[11] *i.e.,* judicial review is restricted to the issues and evidence presented before the agency. For the following reasons, we conclude that exhaustion of issues and evidence is not required in this case.

### (1). Exhaustion is not required for 4–R Act claims brought in federal court.

 (a). Exhaustion of state remedies is not generally required before bringing a federal cause of action in federal court. *Alle-*

---

**9.** *Scheid v. State Board of Tax Commissioners,* 560 N.E.2d 1283, 1284 (Ind.Tax 1990); *Indianapolis, Decatur and Western Railway Co. v. Hood,* 130 Ind. 594, 30 N.E. 705 (Ind.1892).

**10.** *Rambo v. Cohen,* 587 N.E.2d 140, 144 (Ind. App. 1st Dist.1992), *transfer denied* (July 1, 1992); *Indiana Association of Seventh–Day Adventists v. State Board of Tax Commissioners,* 519 N.E.2d 772, 773 (Ind.Tax 1988); *State Board of Tax Commissioners v. Gatling Gun Club, Inc.,* 420 N.E.2d 1324 (Ind.App. 1st Dist.1981).

**11.** The rule is statutory for actions brought under Indiana's Administrative Adjudication Act ("A.A.A."), Ind.Code Ann. § 4–21.5–1–1 *et seq.* (Burns 1990). *Rambo,* 587 N.E.2d at 144. The separation of executive, legislative, and judicial powers established by the Indiana Constitution requires exhaustion in all other cases, even where statutory language expressly allows for *de novo* review of an agency's actions. *Gatling Gun Club, supra.* Therefore, although the Board is exempt from the A.A.A., I.C. § 4–22–1–2; *Gatling*

*Gun Club,* 420 N.E.2d at 1326 n. 2, and the statutory standard of review for Board decisions is not expressly restricted to issues or evidence presented below, I.C. § 6–1.1–8–32 (tax court may set aside Board's decision if "clearly incorrect because the board violated the law or committed fraud" or "not supported by substantial evidence"), exhaustion is generally required in order to obtain judicial review of Board assessments.

For matters within an agency's exclusive jurisdiction, exhaustion is a jurisdictional requirement, *Rambo,* 587 N.E.2d at 144; *Scott County Federation of Teachers v. Scott County School District No. 2,* 496 N.E.2d 610, 616 (Ind.App. 1st Dist.1986); *Board of Tax Commissioners of the State of Indiana v. Vermillion County Property Owners' Association,* 490 N.E.2d 341, 344–45 (Ind.App. 1st Dist.1986), *transfer denied* (Aug. 11, 1986); it therefore cannot be waived though in some circumstances it may be excused.

*ghany Corp. v. Haase,* 896 F.2d 1046, 1050 (7th Cir.1990), *cert. granted and judgment vacated by,* 499 U.S. 933, 111 S.Ct. 1383, 113 L.Ed.2d 441 (1991); *Admiral Theatre v. City of Chicago,* 832 F.Supp. 1195, 1202 (N.D.Ill. 1993). Whether exhaustion will be required in a particular case is closely related to the abstention determination: both are prudential decisions based on comity and are governed by similar principles. *See Iowa Mutual Insurance Co. v. LaPlante,* 480 U.S. 9, 16 n. 8, 107 S.Ct. 971, 976 n. 8, 94 L.Ed.2d 10 (1987). Courts have held that exhaustion is not required for 4–R Act suits brought in federal court. *See, e.g., Burlington Northern Railroad Co. v. Blackfeet Tribe of Blackfeet Indian Reservation,* 924 F.2d 899, 901 n. 2 (9th Cir.1991) (*citing Iowa Mutual Insurance*), *cert. denied,* 505 U.S. 1212, 112 S.Ct. 3013, 120 L.Ed.2d 887 (1992); *Atchison, Topeka & Santa Fe Railway Co. v. State of Arizona,* 559 F.Supp. 1237, 1249 (D.Ariz. 1983) (abstention). Neither of these cases discussed the burden of proof clause, but we may assume that they found nothing therein which conflicted with their holdings. The Ninth Circuit, in *Burlington–Blackfeet,* held that exhaustion was not required because "[t]he complaint presents issues of federal, not tribal, law; no proceeding is pending in any tribal court; the tribal court possesses no special expertise; and exhaustion would not have assisted the district court in deciding federal law issues." *Burlington–Blackfeet,* 924 F.2d at 901 n. 2 (the issue before the court was whether sovereign immunity barred the suit). Addressing the state's request in *Atchison–Arizona* to abstain from adjudicating the plaintiffs' 4–R Act claims, the court first observed that a federal court's duty to adjudicate is usually overridden in suits challenging state tax collections by principles of comity, enacted in the Tax Injunction Act of 1937, 28 U.S.C. § 1341, which counsel restraint in intruding into this sensitive and important area of state governance. However, based on the fact that the 4–R Act is specifically exempt from the operation of the Tax Injunction Act, § 11503(c), and because the Act's legislative history reveals that Congress determined state procedures were inadequate, the court found that abstention in 4–R Act cases would be improper.

The legislative history indicates that the removal of the Tax Injunction Act was done to insure that claims would be heard in federal court because state law remedies were either inadequate or inefficient.

\* \* \* \* \* \*

The 4–R Act and its legislative history are sufficient to conclude that Congress does not desire the federal courts to apply the court-created doctrine of abstention to claims under the 4–R Act. The jurisdiction of the lower federal courts is subject to the plenary control of Congress. This finding of Congress that state law remedies are inadequate should be honored by the Court, and the Court would be remiss if it failed to exercise the jurisdiction given it by Congress.

*Atchison–Arizona,* 559 F.Supp. at 1249. The reasons that make abstention improper in 4–R Act cases also counsel against requiring exhaustion of state administrative and judicial remedies.

(b). Because the 4–R Act applies to the actions of any "State, subdivision of a State, or authority acting for a State or subdivision of a State", § 11503(b), not just the state body at the end of the exhaustion path, *see Union Pacific Railroad v. Department of Revenue of the State of Oregon,* 920 F.2d 581, 585 (9th Cir.1990), the Companies were entitled to challenge the first state action which allegedly discriminated against them—the Board's tentative assessments—without exhausting their state remedies.[12]

(c). The 4–R Act's explicit provision for factual proofs at trial, § 11503(c) (ratio of assessed and true market values to be shown by sales assessment ratio study), without conditioning such proofs on the absence of

---

**12.** If the Companies had initiated this suit immediately after receiving their tentative assessments (or immediately after the tentative assessments became final), there would be no administrative hearing and, thus, no record of issues or evidence to which judicial review would be restricted. To be consistent, we imagine that the Board would have to argue in that case that the Companies waived their entire cause of action—yet the Act expressly permits such a suit to be maintained.

contrary state rules or "burdens of proof", suggests that the Act anticipates a federal court making at least some factual determinations *de novo,* without a restriction in its record imposed by states' rules.

(d). Even if we accepted the Board's argument that the burden of proof clause generally requires federal courts to apply a state's procedural rules, including exhaustion, in 4–R actions, particular state rules could not be adopted if to do so would frustrate the purposes of the Act. Indiana's short deadlines for administrative exhaustion do not permit a meaningful presentation of the issues, arguments, or evidence which are relevant to a 4–R Act claim. As indicated earlier, the Board must provide notice of tentative assessments by September 1st, I.C. § 6–1.1–8–28(a); railroad car companies then have ten days in which to file their objections and request a hearing, I.C. § 6–1.1–8–28(b); and the hearing must be held, the Board's final decision must be issued, and notice of the final assessment must be given all before September 30th, I.C. § 6–1.1–8–29. According to the Board, the Companies' tentative assessments were sent on August 30, 1991 (no indication when the Companies received the notices) and the hearing was held on September 24, 1991. This truncated procedure does not permit rail carriers sufficient time to gather the evidence and arguments necessary to present an effective, meaningful challenge under the 4–R Act. Thus, application of Indiana's rules in this case would frustrate the central purpose of the Act to provide an effective device to root out discriminatory taxation by the States.

### (2). Indiana would not require exhaustion in this case.

■ Indiana does not require exhaustion in all cases.

If the legislature has provided that the administrative remedy is exclusive, the courts cannot exercise jurisdiction until the administrative remedies are exhausted. However, this rule is not applied in a mechanical fashion. Exceptions to the rule have been created and include instances where pursuit of the administrative remedy would be futile, where strict compliance would result in irreparable harm, or when no administrative remedy is provided.

In determining whether administrative remedies are available and should be exhausted, trial courts are to consider:
The character of the question presented and the competency of the administrative agency to answer that question; the avoidance of premature interruption of the administrative process in recognition of the interest of the agency in developing a factual record upon which to exercise its discretion and apply its expertise without the threat of litigious interference; the interest in permitting an agency to correct its own errors, a process by which unnecessary judicial proceedings are obviated; and the avoidance of deliberate or frequent flouting of established administrative processes.

*Public Service Indiana, Inc. v. Nichols,* 494 N.E.2d 349, 353 (Ind.App.4th Dist.1986) (citations omitted). *See also Wilson v. Board of the Indiana Employment Security Division,* 270 Ind. 302, 305, 385 N.E.2d 438, 441 (Ind. 1979), *cert. denied,* 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101 (1979)[13]; *Indiana Civil Rights Commission v. Kightlinger & Gray,* 567 N.E.2d 125, 127–28 (Ind.App.5th Dist. 1991), *transfer denied* (Aug. 20, 1991); *Spencer v. State,* 520 N.E.2d 106, 110 (Ind. App.1st Dist.1988), *transfer denied* (Nov. 30, 1988); *Scott County Federation of Teachers v. Scott County School District No. 2,* 496 N.E.2d 610, 613 (Ind.App.1st Dist.1986).[14]

---

**13.** "It is true, as a general rule, that no one is entitled to judicial relief for an alleged or threatened injury until the prescribed administrative remedy has been exhausted. However, this rule should not be applied mechanistically. Rather, in determining whether or not a plaintiff should be allowed to bypass available administrative channels a court should consider the following factors: the character of the question presented, i.e., whether the question is one of law or fact; the adequacy or competence of the available

administrative channels to answer the question presented; the extent or imminence of harm to the plaintiff if required to pursue administrative remedies, and; the potential disruptive effect which judicial intervention might have on the administrative process." *Wilson,* 385 N.E.2d at 441.

**14.** "Although Indiana courts have often talked of 'exceptions' to the exhaustion requirement, we

The plaintiff in *Wilson* alleged that agency procedures which led to the denial of her unemployment compensation benefits violated her due process rights under the Indiana and United States Constitutions. In addressing the issue of whether the plaintiff's failure to exhaust her administrative remedies deprived the courts of jurisdiction, the Indiana Supreme Court first observed that the plaintiff's claim was not specifically about the denial of her claim for benefits, but "[r]ather, the gist of her action was a constitutional challenge to the procedures employed by the Division in suspending and terminating benefits." *Wilson,* 385 N.E.2d at 441. After listing the factors excusing exhaustion, the Court held:

> In the present case, the question presented is of constitutional character. With all due respect, we think that the resolution of such a purely legal issue is beyond the expertise of the Division's administrative channels and is thus a subject more appropriate for judicial consideration.
>
> In sum, we hold that given the constitutional character of the issue presented by Wilson's complaint, it was not necessary for her to press the issue through administrative channels as a precondition to judicial review.

*Id.* Although some cases have refused to read *Wilson* as giving the solely legal nature of the issues presented dispositive effect, *see, e.g., Scott County Federation of Teachers,* 496 N.E.2d at 614 ("The issue of whether the question is one of fact or law is just one factor the court must consider"); *Civil Rights Commission v. Kightlinger & Gray,* 567 N.E.2d 125, 127–28 (Ind.App.5th Dist. 1991) (excusing exhaustion because of the weight of all the factors, not just the solely legal character of the issues); *Indiana Department of Environmental Management v. Chemical Waste Management of Indiana, Inc.,* 604 N.E.2d 1199, 1203 (Ind.App.2nd Dist.1992) (same), *transfer denied* (Feb. 9, 1993), we believe *Wilson* holds that exhaustion is excused whenever the issue presented is solely legal, *Wilson,* 385 N.E.2d at 441 (the Supreme Court excused exhaustion because of the legal nature of the issues without discussing the effect of any of the other listed factors), and later decisions have confirmed this interpretation, *see Indiana Department of Highways v. Dixon,* 541 N.E.2d 877, 882, 885 (Ind.1989); *Rambo,* 587 N.E.2d at 144 ("When the character of the question is beyond the pale of the agency's competency, expertise, and authority, failure to exhaust will be excused"); *Spencer,* 520 N.E.2d at 110 ("If it is a purely legal issue which is beyond the expertise of the available agency, it is more appropriate for judicial consideration and administrative channels may be bypassed."); *Indiana & Michigan Electric Co. v. Public Service Commission,* 495 N.E.2d 779, 784 (Ind.App.2nd Dist.1986), *transfer denied* (Nov. 19, 1986); *Metropolitan Development Commission of Marion County v. I. Ching, Inc.,* 460 N.E.2d 1236, 1239 (Ind.App.4th Dist.1984), *rehearing denied,* 463 N.E.2d 498 (1984); *Indiana State Department of Welfare, Medicaid Division v. Stagner,* 410 N.E.2d 1348, 1353 (Ind.App.4th Dist.1980); Wayne K. Lewis, "Administrative Law" in "Survey of Recent Developments in Indiana Law", 15 Ind.L.Rev. 1, 25 (1982)

find that our courts actually have undertaken a balancing process. As Professor Davis has stated, '[The courts] weigh the reasons pulling in each direction and decide whether requiring exhaustion is desirable.' 4 K. Davis, *Administrative Law Treatise* § 26:1 at 414 (2d ed. 1983). The major factors affecting the analysis are as follows:

> " 'Pulling away from requirement of exhaustion are combinations of such factors as irreparable injury to a party from pursuing the administrative remedy, clear absence of agency jurisdiction, clear illegality of the agency's position, a dispositive question of law peculiarly within judicial competence, the futility of exhaustion, and expense and awkwardness of the administrative proceeding as compared with inexpensive and efficient judicial disposition of the controversy.
>
> " 'Pulling toward requirement of exhaustion are combinations of such factors as need for factual development, importance of reflecting agency's expertise, or policy preferences in the final result, probability that the agency will satisfactorily resolve the controversy without judicial review, protection of agency processes from impairment by avoidable interruption, conservation of judicial energy by avoiding piecemeal or interlocutory review, and providing the agency opportunity to correct its own errors.'

"Davis, § 26:1 at 414–15." *Scott County Federation of Teachers,* 496 N.E.2d at 613–14.

(reviewing *Stagner*).[15] This Court has previously held that "constitutional issues are not within the domain of administrative proceedings" in Indiana, *Alleghany Corp. v. Eakin*, 712 F.Supp. 716, 719 (S.D.Ind.1989) (citing *Wilson*), and we conclude that the same principle applies to federal statutory challenges.[16]

When legal and factual issues co-exist in a claim, however, exhaustion is not automatically excused. *See Stagner*, 410 N.E.2d at 1353; *Evans v. Stanton*, 419 N.E.2d 253, 255 (Ind.App.1st Dist.1981); R. George Wright, "Social Security and Public Welfare" in "1982 Survey of Recent Developments in Indiana Law", 16 Ind.L.Rev. 339, 342 (1983) (reviewing *Evans v. Stanton*). In that case, the determination will be based on a weighing of all the factors. If an agency cannot grant the relief requested, it lacks the expertise to address the dispositive legal issues presented, and there are no other grounds by which the legal issues may be avoided, exhaustion would be useless. In addition, if the factual issues in a case would not be developed by an agency in an administrative proceeding, exhaustion would be futile. *See Barnes v.*

*Clayton*, 590 N.E.2d 1112, 1114–15 (Ind. App.3d Dist.1992) ("the rule does not apply when an administrative procedure and remedy does not exist or when the remedy is impossible or fruitless and of no value under the circumstances.").

In this case, the dispositive legal issue is whether Indiana's property tax statutes violate the 4–R Act. The Companies do not allege *de facto* discrimination by the Board in applying the statutes or in calculating the Companies' property values. The powers and duties of the Board are governed by statute:

> **Powers and duties of board.—**The state board of tax commissioners:
>
> (1) Shall see that the property taxes due this state are collected;
>
> (2) Shall see that the penalties prescribed under this article are enforced;
>
> (3) Shall investigate the property tax laws and systems of other states and countries; and

**15.** Relying on the Supreme Court's decision in *State ex rel. Paynter v. Marion County Superior Court, Room No. 5*, 264 Ind. 345, 344 N.E.2d 846 (Ind.1976), and *dicta* in *Clark v. Lee*, 273 Ind. 572, 406 N.E.2d 646, 649 (Ind.1980), the Court of Appeals in *Thompson v. Medical Licensing Board of Indiana*, 180 Ind.App. 333, 389 N.E.2d 43, *rehearing denied*, 180 Ind.App. 347, 398 N.E.2d 679 (1979), *cert. denied*, 449 U.S. 937, 101 S.Ct. 335, 66 L.Ed.2d 160 (1980) held that the factors excusing exhaustion were applicable only in those cases where the legislature had not explicitly mandated the exclusivity of the administrative remedy. *Thompson*, 389 N.E.2d at 47–48. In *Thompson*, the Court held that, because the plaintiff's case arose under the A.A.A., which provided an exclusive administrative remedy, he was required to exhaust his administrative remedies even though he raised only questions of law. The Court of Appeals distinguished *Wilson* on the basis that the language of the statute under which that case arose, the Indiana Employment Security Act, I.C. § 22–4–1–1 *et seq.*, did not explicitly characterize its administrative review procedures as exclusive. *Id.* at 48. Since that decision, however, the Indiana Supreme Court and lower courts have applied the *Wilson* factors to cases governed by the A.A.A. *See Indiana Department of Highways v. Dixon*, 541 N.E.2d 877, 882, 885 (Ind.1989); *Rambo*, 587 N.E.2d at 144; *Kightlinger & Gray, supra; Chemical Waste Management, supra; Scott County Federation of Teachers*, 496 N.E.2d at 614; *Evans v. Stanton*,

419 N.E.2d 253, 255 (Ind.App.1st Dist.1981). At any rate, the provision for appeals of Board assessments by public utilities is as discretionary as the *Thompson* court found the Indiana Employment Security Act's provision to be. *Compare Thompson*, 389 N.E.2d at 48 (finding I.C. § 22–4–17–12's use of the language "[e]ither party to the dispute, the board or the director *may* ... appeal the decision to the Appellate Court*" dispositive (court's emphasis)) with Ind.Code Ann. § 6–1.1–8–30 (Burns 1989) ("If a public utility company files its objections ... the company *may* appeal the board's final assessment of that property to the tax court." (emphasis added)).

**16.** The Indiana Supreme Court recently affirmed a decision of the Court of Appeals holding that a constitutional challenge to an agency decision was automatically waived for failure to raise it before the agency. *National Rural Utilities Cooperative Finance Corp. v. Public Service Commission of Indiana*, 528 N.E.2d 95, 104–05 (Ind. App.3d Dist.1988), *affirmed*, 552 N.E.2d 23, 29 (Ind.1990). Neither the Court of Appeals nor the Supreme Court, however, discussed any of the Indiana case law on administrative exhaustion and the Court of Appeals cited, as its only authority, two appellate decisions (one federal) finding waiver of issues which were not raised in lower courts instead of administrative agencies. We consider these cases aberrational. *Cf. Citizens Action Coalition of Indiana, Inc. v. Public*

(4) May recommend changes in this state's property tax laws to the general assembly.

Ind.Code Ann. § 6–1.1–30–14 (Burns 1989). **Specific duties of state board of tax commissioners.**—The state board of tax commissioners shall:

(1) Interpret the property tax laws of this state;

(2) Instruct property tax officials about their taxation and assessment duties;

(3) See that all property tax assessments are made in the manner provided by law.

Ind.Code Ann. § 6–1.1–35–1 (Burns 1989). The Board is not granted therein authority to declare Indiana statutes unenforceable; in fact, it is instructed to see that property taxes are assessed in the manner provided by law. Because the Board must follow applicable Indiana statutes, *see Indiana Department of Revenue v. Colpaert Realty Corp.*, 231 Ind. 463, 479–80, 109 N.E.2d 415, 422–23 (Ind.1952), and lacks authority or power to declare such statutes illegal or unenforceable, *see Johnson v. Robison*, 415 U.S. 361, 368, 94 S.Ct. 1160, 1166, 39 L.Ed.2d 389 (1974), or to enjoin their enforcement, it is evident that the adjudication of the legality of Indiana statutes is "beyond the pale" of the Board's competency, expertise, and authority.[17] Indeed, in its September 27, 1991 decision, the Board declared that it was required to follow the challenged statutes regardless of the Companies' 4–R Act claim:

9. While the Companies have proposed the Alternative Method, it does not comply with the statutory requirement of the method used to allocate a portion of the Companies railroad cars to the State of Indiana. The State Board must apply the law as prescribed by the Indiana General Assembly.

\* \* \* \* \* \*

13. "An administrative agency's regulations must fall within the scope of the agency's enabling legislation. The agency cannot enlarge or vary the power given by the legislature or create a rule out of harmony with the statute. See *Blue v. Beach* (1900), 155 Ind. 121, 56 N.E. 89; *Wallace v. Feehan* (1934), 206 Ind. 522, 190 N.E. 438; *Shultz v. State* (1981), Ind.App., 417 N.E.2d 1127, 1136." *Hutchison v. State Board of Tax Commissioners, et al.*, 520 N.E.2d 1281 (Ind.Tax 1988).

14. Indiana Code 6–1.1–8–12 specifically limits the State Board to the use of the Statutory Method for the allocation of railcars. The Statutory Method allocates a portion of the Companies' railcars to the State of Indiana based on two (2) common indices: mileage and earnings.

Board's Decision, Conclusions of Law, pp. 9–11.[18] *See Miller v. Gibson County Solid*

---

*Service Company of Indiana, Inc.*, 582 N.E.2d 330, 333–34 (Ind.1991), *rehearing denied*, 595 N.E.2d 255 (1992).

**17.** The Board's authority to interpret Indiana's property tax laws under I.C. § 6–1.1–35–1(1) is unavailing because (1) the authority to interpret the meaning of statutes does not include the authority to determine their constitutionality or compatibility with other law and the Board is not granted judicial authority to issue such declaratory or injunctive judgments; (2) the Board is instructed to follow Indiana statutes, I.C. § 6–1.1–35–1(3), and, as seen in its decision quoted *infra*, the Board has apparently so interpreted its governing statutes; and (3) there is no suggestion of ambiguity in the statutes at issue in this case which would justify a narrowing interpretation by the Board.

**18.** Whether the Board may constitutionally ignore federal constitutional and statutory challenges is doubtful under the Supremacy Clause of the United States Constitution, Art. 6, cl. 2.

See *Alleghany Corp. v. Haase*, 896 F.2d 1046, 1053–57 (7th Cir.1990) (Easterbrook, J., concurring), *cert. granted and judgment vacated by*, 499 U.S. 933, 111 S.Ct. 1383, 113 L.Ed.2d 441 (1991). If following federal law causes state officers to violate state law or agency rules, the Supremacy Clause will protect them from state discipline or sanction. See *State of Georgia v. Rachel*, 384 U.S. 780, 785, 86 S.Ct. 1783, 1786, 16 L.Ed.2d 925 (1966); *Memorial Hospital For McHenry County v. Shadur*, 664 F.2d 1058, 1064 (7th Cir.1981); *In re Hampers*, 651 F.2d 19, 21 (1st Cir.1981); *In re Grand Jury Proceedings*, 596 F.2d 630, 632 (4th Cir.1979); *Gottlieb v. County of Orange*, (VLB), Memorandum Order, 151 F.R.D. 258, 260–61 (S.D.N.Y.1993); *Jackson v. Brinker*, 147 F.R.D. 189, 201 (S.D.Ind.1993). The Court need not resolve this question on the present motion, however. For our immediate purposes, we will consider the Board bound by its declaration, unretracted in this case, that it lacks the authority to determine or act on federal statutory challenges. See *Alleghany–Haase* 896 F.2d at 1052 (opinion of the Court).

*Waste Management District,* 622 N.E.2d 248, 253–55 (Ind.Tax 1993) (exhaustion excused because the Board is without power or procedure to address Indiana Open Door Law violations; only courts may grant relief).[19] While the Indiana Tax Court has addressed, on judicial review, federal and state constitutional and statutory challenges which were presumably administratively exhausted, *see, e.g., Emmis Publishing Co. v. Indiana Department of Revenue,* 612 N.E.2d 614 (Ind. Tax 1993) (First Amendment challenge to tax code's discrimination between newspapers and other publications); *Area Interstate Trucking, Inc. v. Indiana Department of Revenue,* 605 N.E.2d 272 (Ind.Tax 1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 183, 126 L.Ed.2d 142 (1993) (Due Process and Equal Protection challenge to motor carrier fuel tax statute); *Thorntown, supra* (4–R Act challenge); *Kentron, Inc. v. Board of Tax Commissioners of the State of Indiana,* 572 N.E.2d 1366, 1372 (Ind.Tax 1991) (Commerce Clause challenge to denial of exemption), we conclude that Indiana law places such issues outside the realm of the Board's authority, competency, and expertise, and they need not have been exhausted.

As indicated, any factual findings which would be necessary to determine whether the statutes in question violate the 4–R Act would most likely pertain to the discriminatory effect of the statutes on rail carriers as opposed to other commercial and industrial taxpayers *en masse* or the Board's practices and procedures in implementing the statutes. Because the Board is constrained to apply the operative Indiana statutes, which means not addressing 4–R Act challenges such as the Companies', such factual information would not be developed in a hearing devoted to objections to particular taxpayers' assessments. The practices and procedures employed by the Board in making assessments would also be irrelevant to an assessment hearing before the Board. Such information is more appropriately and efficiently gathered through discovery in an independent judicial action. Thus, there would be no opportunity for the Board to develop the type of information relevant to a 4–R Act challenge. The Board did not advise us of, and we do not perceive, any other factual or state legal grounds on which the Companies' federal statutory challenges may be avoided or rendered moot.[20]

Therefore, because the Board cannot provide the declaratory and injunctive relief the Companies seek, federal legal issues are either the sole or predominate issues presented, the Board is incompetent to address those issues, any factual issues would be irrelevant to and not developed in an administrative proceeding, and there are no other state law ground shown by which to avoid the 4–R Act challenge, we conclude that Indiana would excuse exhaustion of the Companies' 4–R Act claims in this case. If exhaustion is excused under Indiana law, then there can be no requirement of a restricted record. Because exhaustion and a restricted record on review are statutorily and constitutionally required in Indiana only to preserve exclusive agency jurisdiction and the separation of powers, voluntary presentation by the Companies of some issues and evidence to the Board in a case which does not invoke those constitutional concerns should not lead to such restrictive results.[21]

---

**19.** If an agency has been granted authority to hear constitutional and other legal challenges and the power to grant relief, exhaustion of legal issues would be required. *See Metropolitan Development Commission of Marion County v. I. Ching, Inc.,* 460 N.E.2d 1236, 1239 (Ind.App. 4th Dist.1984), *rehearing denied,* 463 N.E.2d 498. (1984), *transfer denied* (Aug. 1, 1984).

**20.** There do not appear, for instance, to be any exemptions, I.C. § 6–1.1–11–1 *et seq.,* or equalization provisions, I.C. § 6–1.1–14–1 *et seq.,* by which the Board may account for discriminatory taxation of rail carriers. *Cf. Metropolitan–I. Ching, supra* note 19. We note the prior existence of a 4–R equalization adjustment for rail-

road assessments which was adopted as part of a settlement of earlier 4–R Act litigation. *See Thorntown Telephone,* 588 N.E.2d at 616–17 n. 7.

**21.** States may not impose exhaustion requirements on federal cause of action brought in their own courts if exhaustion is not required in federal court. *Felder v. Casey,* 487 U.S. 131, 142–43, 108 S.Ct. 2302, 2308–09, 101 L.Ed.2d 123 (1988); *Donnelly v. Yellow Freight System, Inc.,* 874 F.2d 402, 409–10 (7th Cir.1989), *affirmed,* 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990). Therefore, if there is any way of reconciling the holdings of *Burlington–Blackfeet, supra,* and *Atchison–Arizona, supra,* with the Board's interpretation of the burden of proof

**(3). The Companies have exhausted the issue of 4–R Act compliance.**

The Indiana Supreme Court has given a broad definition to the "issue" which must be administratively exhausted before judicial review will be afforded. In *Citizens Action Coalition of Indiana, Inc. v. Public Service Company of Indiana, Inc.*, 582 N.E.2d 330, 333, 334 (Ind.1991), *rehearing denied*, 595 N.E.2d 255 (1992), the Court of Appeals had dismissed a public interest group's suit challenging the legality of the Public Service Commission's decision not to reduce a public utility's rates on the ground that the group had failed to present its arguments to the Commission. The Supreme Court reversed, holding that, although the precise arguments presented to the appellate court weren't presented to the Commission, it was sufficient that the central issue of whether the utility's rates should have been lowered was before the Commission:

> The issue presented to the Commission for its determination was whether PSI's retail rates should be lowered to reflect the decrease in that utility's operating expenses as a result of the lowered federal corporate tax rate occasioned by the Tax Reform Act. After reaching its decision that PSI's rates should not be lowered, the Commission entered its June 1987 order to that effect. . . . The issue presented on appeal is whether that part of the June 1987 order pertaining to PSI was proper. Under I.C. 8–1–3–1, CAC's pleading that the Commission's order was "contrary to law" was adequate to place this issue before the appellate tribunal.

> \*　　\*　　\*　　\*　　\*　　\*

PSI contends that language from I.C. 8–1–3–1 itself precludes CAC from advancing the arguments set out in its brief. The pertinent provision states that any person or entity adversely affected by a Commission decision "may . . . appeal to the court of appeals of Indiana for errors of law *under the same terms and conditions as govern appeals in ordinary civil actions. . . .*" (Emphasis added). PSI interprets the highlighted language to equate the issues which may be raised on appeal with the arguments which may be made in pursuit of the desired resolution of those issues and to limit the arguments available to one invoking I.C. 8–1–3–1 to those which were made before the Commission by a party or intervenor at the hearing below. . . . First, as pointed out above, the issue being appealed by CAC is the selfsame issue that was presented to the Commission, namely, whether PSI's retail rates should have been lowered as a consequence of the reduction of the federal income tax rate.

*Citizens Action Coalition*, 582 N.E.2d at 333, 334.

To the extent that the Board objects to the relevancy of the Companies' discovery on the grounds that it requests information relating to arguments or contentions which were not presented to the Board (*e.g.*, assessed or true market values, 5 percent threshold, or discriminatory impact of the Statutory Method), its objection must be rejected under this authority because the issue which was before the Board—*viz.*, whether the Board's assessments of property taxes on the Companies' indefinite-situs distributable property violated the 4–R Act—is the same issue before this Court. Therefore, even if the burden of proof clause compelled this Court to apply Indiana's exhaustion rules, any argument supporting the relief requested by the Companies could properly be presented to the

clause as requiring federal courts to apply state procedural and substantive rules of review, exhaustion still could not be imposed in this 4–R action because there could be no Indiana exhaustion rule to adopt.

The continued vitality of the Court of Appeals' holdings in *Thompson v. Medical Licensing Board*, 180 Ind.App. 333, 398 N.E.2d 679 (3d Dist.1979) (on petition for rehearing), and *New Trend Beauty School, Inc. v. Indiana State Board of Beauty Culturist Examiners*, 518 N.E.2d 1101,

1104 (Ind.App.2d Dist.1988), requiring exhaustion of federal causes of action (§ 1983 claims), is questionable following *Felder, supra*, and *Donnelly, supra*. The Indiana Tax Court's recent statement in *Harlan Sprague Dawley, Inc. v. Indiana Department of State Revenue*, 583 N.E.2d 214, 224 (Ind.Tax 1991), that exhaustion is required in § 1983 cases is best interpreted, considering the Court's cites, as based on the unique prohibition of the Tax Injunction Act of 1937, 28 U.S.C. § 1341, which does not apply in 4–R Act claims, 49 U.S.C. § 11503(c).

Court and information relevant to those arguments is discoverable even if Indiana's judicial review evidentiary restrictions would prevent its admission as evidence at trial. *Oppenheimer Fund, supra; Miller v. Pancucci, supra; Federal Savings & Loan Insurance v. Commonwealth Land Title Insurance, supra;* see note 6.

### b. Restricted record.

■■■ Even if exhaustion of the Companies' claims are required under the burden of proof clause and Indiana law, the Board has not demonstrated that Indiana would restrict the court's adjudication in this case to a review of the evidence and issues presented to the Board because it failed to address the only type of exhaustion which would be required in this case.

A 4–R Act claim would be construed, in the same manner as a federal § 1983 claim, as a separate cause of action, independent of any suit for judicial review of an administrative decision. In Indiana, a declaratory judgment action, rather than a petition for judicial review, is the proper method for challenging the legality of the statutes an agency administers, *Thompson,* 389 N.E.2d at 51–52 (concurrence), or the "constitutionality or compatibility of [an agency's] rules with federal law", *Indiana & Michigan Electric Co.,* 495 N.E.2d at 784. *See Chemical Waste Management,* 604 N.E.2d at 1203; *Stevens v. Indiana Department of Public Welfare,* 566 N.E.2d 544, 547 (Ind.App. 4th Dist.1991), *transfer denied* (Dec. 5, 1991) (plaintiff may bring a separate § 1983 suit seeking injunctive and declaratory relief as long as it is not joined with an unexhausted claim for judicial review).[22] Although independent causes of action, as well as petitions for judicial review of administrative action, are subject to exhaustion requirements, *see Wilson,* 385 N.E.2d at 441; *Board of School Commissioners of the City of Indianapolis v. Eakin,* 444 N.E.2d 1197, 1201 (Ind.1983) ("In Indiana ... no one is entitled to judicial relief for an alleged or threatened injury

until the prescribed administrative remedy has been exhausted."), the Board did not advise the Court of the effect of exhaustion of independent actions on a court's later adjudication—specifically, whether such suits may be tried only on the basis of the evidence and issues exhausted before the agency. The case law cited by the Board addressed only the limited scope of judicial review permitted in appeals of administrative decisions. *American Juice Co., Inc. v. State Board of Tax Commissioners,* 527 N.E.2d 1169, 1170 (Ind.Tax 1988); *Indiana Association of Seventh–Day Adventists v. State Board of Tax Commissioners,* 519 N.E.2d 772, 773 (Ind.Tax 1988); *Meridian Hills Country Club v. State Board of Tax Commissioners,* 512 N.E.2d 911, 912 (Ind.Tax 1987); *State Board of Tax Commissioners v. Gatling Gun Club, Inc.,* 420 N.E.2d 1324, 1325 (Ind.App. 1st Dist.1981), *rehearing denied* (July 7, 1981), *transfer denied* (Oct. 27, 1981).

As indicated above, exhaustion of claims which are within the primary jurisdiction of an agency is statutorily and constitutionally required in order to preserve the exclusive paths of administrative appeal and the separation of executive, judicial, and legislative powers. (See note 11). In that context, therefore, exhaustion is a jurisdictional requirement. Exhaustion of independent causes of action, on the other hand, is prudentially required by the courts in order to, *inter alia,* avoid disruptive intrusion into agency operations, to afford agencies the first opportunity to correct error, and to afford the courts the benefit of agencies' expertise in developing facts and interpreting their relevant laws and rules. Whether a court's later adjudication should be restricted to the exhausted evidence and issues, therefore, depends on whether the claim is within the primary jurisdiction of the agency or constitutes a separate cause of action. If an administrative appeal, the record should be closed on review because the statutory and constitutional jurisdictional mandates are still

---

**22.** According to the doctrine of "primary jurisdiction" in Indiana, if any part of a claim is within the exclusive jurisdiction of an agency, exhaustion of the whole claim is required. *Shlens v. Egnatz,* 508 N.E.2d 44, 46 (Ind.App.3d Dist.1987), *transfer denied* (Dec. 18, 1987); *Indiana Forge and Machine Co., Inc. v. Northern Indiana Public Service Co.,* 396 N.E.2d 910, 912–13 (Ind.App.3d Dist.1979).

operative. *See Gatling Gun Club, supra.* On the other hand, the reasons for prudential exhaustion do not necessarily call for a restricted record in the post-exhaustion adjudication because the relevant exhaustion interests are fully served once the agency has, through its decision, applied its expertise to the claim and taken advantage of the opportunity to correct any errors. Whether the record should be restricted in that case (or, whether further exhaustion should be required) should depend on prudential concerns such as whether the court believes the additional issues or evidence sought to be introduced would have made a material difference in the agency's decision, whether further agency action would be helpful to the court, and whether the new evidence or issues are beyond the agency's expertise, interest, or competency to develop or evaluate.

In this case, the Companies challenge the legality of Indiana statutes and seek declaratory and injunctive relief through this 4–R Act suit. As indicated, there can be no reasonable dispute that a 4–R Act claim is an independent cause of action, not a petition for judicial review of an administrative decision. In the absence of advice to the contrary, therefore, we may assume that, even if the Companies were prudentially required to exhaust their 4–R Act claims before the Board, our consideration would not be limited to the evidence or issues presented to the Board. We find that any further consideration by the Board of the Companies' claims would be unavailable and would not materially assist the Court in its adjudication of the claims.

### c. Conclusion.

We reject the Board's contention that adjudication of this cause is limited to the evidence and issues presented at the September 24, 1991 hearing because exhaustion is not required of 4–R claims in federal court, exhaustion of this claim would not be required in Indiana courts, and/or, even if exhaustion were required, the Board has not demonstrated that Indiana would restrict the record in this case. Because the Court's adjudication is not restricted, the Board's objection that the Companies' discovery requests are irrelevant is overruled.

### II.C.3. 5 percent threshold.

The Board's position is that the Companies are asserting an assessment variation claim under § 11503(b)(1) and are seeking the information requested in their interrogatories and requests for admission in order "to establish the necessary assessment variation." (Defendant's Response, pp. 2, 7). While the Board often emphasizes § 11503(c)'s requirement of a 5 percent assessment ratio variation in order to obtain 4–R Act relief, it never declares the significance of this threshold. Apparently it argues that that the Companies may not discover or present new evidence to establish either assessment ratios or the required 5 percent threshold. As discussed earlier, however, it is unlikely that the Companies will need to prove assessment ratios.

In addition, there was no necessity for the Companies to establish the 5 percent ratio threshold before the Board. First, the 5 percent threshold does not apply to § (b)(4) actions. *See Trailer Train Co. v. State Board of Equalization,* 697 F.2d 860, 866 (9th Cir.1983). Second, even if the threshold applied, it is a limit on judicial relief and thus is a determination for a court to make, not an administrative agency. Third, as merely a practical limit on *judicial* relief in order to exclude *de minimis* claims, the threshold forms no part of the definitions of forbidden discriminatory conduct by the states provided in § 11503(b), which would have been the only relevant issue at the hearing. *Southern Railway Co. v. State Board of Equalization,* 712 F.Supp. 1557, 1565–66 (N.D.Geo.1988). Finally, the 5 percent threshold is clearly met in a case such as this where the Companies allege that their property is taxed whereas other commercial and industrial taxpayers' identical property is not taxed at all; the infinite difference between a zero tax and any amount of tax obviously satisfies the 5 percent threshold.

### II.D. Conclusion.

For the reasons given above, the Companies' motion to compel the Board's responses to its interrogatories and requests for admission is granted and the Board is ordered to respond forthwith.

378

## III. Objections by the Department.

█ The Department objects to the Companies' requests for admissions and interrogatories in their entirety because it is "responsible only for the collection and deposit of Indiana property tax on a railroad car company's indefinite-situs distributable property," and because "Revenue does not assess, compute or certify the tax." (Defendants' Response, p. 8). Since the requests go beyond the Department's statutorily authorized duties, it insists that it does not have to answer either the interrogatories or the requests for admissions.

█ The Department is correct regarding its statutorily authorized duties. *See* Ind.Code Ann. § 6–1.1–8–35 (Burns 1989). A basic tenet of discovery is that if a party knows the answer, the party must answer, as long as the information requested is not privileged, is relevant, and may lead to admissible evidence. Fed.R.Civ.P. 26(b). The Department must answer the interrogatories or make the admissions if it knows the answer or can easily find the answer in its records. But if the Department does not know an answer, it must say as much and state why. For example, if a question requires information outside of the Department's possession, custody, or control, it must so answer, if responding is unduly burdensome, it must make that objection. I grant the Companies' motion to compel as to the Department.

## IV. Conclusion.

The Board's and the Department's objections are overruled. The Companies' motion to compel the Board's and the Department's responses to their interrogatories and requests for admission is **GRANTED,** and the Board and the Department are ordered to respond to the Companies' discovery requests forthwith.

**SO ORDERED.**